[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 404.]

THE STATE OF OHIO, APPELLANT, *v.* COOK, APPELLEE.

[Cite as *State v. Cook*, 1998-Ohio-291.]

*Criminal procedure—Classification as a sexual predator—R.C. 2950.09(B)(1) as applied to conduct prior to the effective date of the statute, does not violate the Retroactivity Clause of Section 28, Article II of the Ohio Constitution or the Ex Post Facto Clause of Section 10, Article I of the United States Constitution.*

1.  R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the Retroactivity Clause of Section 28, Article II of the Ohio Constitution.

2.  R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the *Ex Post Facto* Clause of Section 10, Article I of the United States Constitution.

(No. 97-1985—Submitted June 10, 1998—Decided September 30, 1998.)

APPEAL from the Court of Appeals for Allen County, No. 1-97-21.

———————————

{¶ 1} On November 14, 1996, defendant-appellee, Tony Cook, was indicted on two counts of violating R.C. 2907.05(A)(4), gross sexual imposition, based on allegations that defendant was involved with two female children under the age of thirteen years during June 1996. Defendant pled guilty to one count of gross sexual imposition and the other count was dismissed. On January 9, 1997, the plea was entered on the record and defendant was convicted in accordance with his plea. At the sentencing hearing held on February 14, 1997, the trial court found defendant to be a sexual predator pursuant to R.C. 2950.01.

{¶ 2} Defendant appealed from the trial court's finding, and the Allen County Court of Appeals reversed. The appellate court found that R.C. 2950.09

significantly changed the law as it existed when the offense was committed, imposing additional duties and attaching new disabilities to past transactions. The court found that the statute was unconstitutionally retroactive as applied to defendant and that defendant could not be required to register as a sexual predator under the new law, although he could still be required to register as a sex offender under the law in force at the time of the offense. Having found the law unconstitutional under the Ohio Constitution on the basis of retroactivity, the court of appeals declined to address the federal *ex post facto* claim raised by defendant.

{¶ 3} In addition, the court of appeals concluded that the trial court had improperly conducted the sexual predator determination hearing and sustained defendant's assignment of error on that issue. Accordingly, the appellate court reversed the trial court's finding that defendant was a sexual predator and remanded the cause for further proceedings.

{¶ 4} This cause is now before this court upon the allowance of a discretionary appeal.

---

*Betty D. Montgomery*, Attorney General, *Jeffrey S. Sutton*, State Solicitor, *David M. Gormley* and *Kathleen S. Peterson*, Assistant Attorneys General; and *David E. Bowers*, Allen County Prosecuting Attorney, for appellant.

*Brian M. Fisher*, for appellee.

*Gray & Duning* and *Donald E. Oda II*, urging affirmance for *amicus curiae*, Ohio Association of Criminal Defense Lawyers.

*David H. Bodiker*, Ohio Public Defender, and *Robert L. Lane*, Chief Appellate Counsel, urging affirmance for *amicus curiae*, Ohio Public Defender.

*Jeffrey M. Gamso* and *Joan M. Englund*, urging affirmance for *amicus curiae*, American Civil Liberties Union of Ohio Foundation, Inc.

---

**LUNDBERG STRATTON, J.**

**{¶ 5}** Today we are presented with the questions of whether R.C. 2950.09(B), as applied to conduct prior to the effective date of the statute, is a retroactive law that violates Section 28, Article II of the Ohio Constitution, and whether R.C. Chapter 2950 is an *ex post facto* law prohibited by Section 10, Article I, United States Constitution. Because we find that R.C. Chapter 2950 is neither impermissibly retroactive nor an *ex post facto* law, we find that R.C. 2950.09 is constitutional.

I

HISTORY AND OVERVIEW

**{¶ 6}** In the summer of 1994, seven-year-old Megan Kanka was raped and murdered in Hamilton Township, New Jersey, by a convicted sex offender, Jesse Timmendequas, who had moved in with two other convicted child abusers across the street from the Kankas.[1] Concerned citizens demanded legislation in New Jersey that would require community notification when a sex offender moves into the neighborhood. Three months later, on October 31, 1994, New Jersey Governor Christine Todd Whitman signed "Megan's Law," a legislative package that included a provision for public notification.[2] N.J.Stat.Ann. 2C:7-1 *et seq.*

**{¶ 7}** Similar crimes resulted in so-called sex offender statutes on both the state and federal levels. A federal crime bill passed in 1994 included the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Section 14071, Title 42, U.S.Code. Today, all fifty states have enacted sex offender registration laws of varying degrees.[3]

---

1. Popkin, Natural Born Predators (Sept. 19, 1994), U.S. News & World Report, at 66.

2. 1994 N.J. Laws 538.

3. For a list of the sex offender registration laws of all fifty states, see *People v. Ross* (1996), 169 Misc.2d 308, 309, 646 N.Y.S.2d 249, 250, fn. 1.

**{¶ 8}** Since 1963, Ohio has had a sex offender registration statute. See former R.C. Chapter 2950, 130 Ohio Laws 669. However, in 1996, the General Assembly rewrote R.C. Chapter 2950 as part of Am.Sub.H.B. No. 180 ("H.B. 180"), 146 Ohio Laws, Part II, 2560, 2601. H.B. 180 was passed in May 1996 and signed by Governor Voinovich in July 1996. Some provisions became effective January 1, 1997, including the classification provision, R.C. 2950.09. Section 3 of H.B. 180, 146 Ohio Laws, Part II, 2668. Other provisions, such as the registration and notification requirements, R.C. 2950.04, .05, .06, .10, and .11, became effective July 1, 1997. Section 5 of H.B. 180, 146 Ohio Laws, Part II, 2669.

**{¶ 9}** The General Assembly, in repealing and reenacting R.C. Chapter 2950, stated that its intent was "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). The General Assembly stated that "[i]f the public is provided adequate notice and information about sexual predators, habitual sex offenders, and certain other offenders who commit sexually oriented offenses, members of the public and communities can develop constructive plans to prepare themselves and their children for the sexual predator's, habitual sex offender's, or other offender's release from imprisonment, a prison term, or other confinement. This allows members of the public and communities to meet with members of law enforcement agencies to prepare and obtain information about the rights and responsibilities of the public and the communities and to provide education and counseling to their children." R.C. 2950.02(A)(1).

**{¶ 10}** Further, the General Assembly declared that "[s]exual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment, a prison term, or other confinement and that protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest." R.C. 2950.02(A)(2). Finally, the General Assembly stated that "[a] person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's

interest in public safety and in the effective operation of government." R.C. 2950.02(A)(5).

A

*Classification Provisions of R.C. Chapter 2950*

{¶ 11} R.C. Chapter 2950 contains three primary provisions: classification, registration, and community notification. The first phase of H.B. 180 took effect on January 1, 1997, when the General Assembly established a new classification system for convicted sex offenders. Under the new system, a sentencing court must determine whether sex offenders fall into one of the following classifications: (1) sexually oriented offender; (2) habitual sex offender; or (3) sexual predator. R.C. 2950.09. A sexually oriented offender is one who has committed a "sexually oriented offense" as that term is defined in R.C. 2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator. A habitual sex offender is "a person who is convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses." R.C. 2950.01(B). Finally, a sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E).

{¶ 12} In those cases where an offender is convicted of a violent sexually oriented offense and also of a specification alleging that he or she is a sexually violent predator, the sexual predator label attaches automatically. R.C. 2950.09(A). However, in all other cases of sexually oriented offenders, only the trial court may designate the offender as a predator, and it may do so only after holding a hearing where the offender is entitled to be represented by counsel, testify, and call and cross-examine witnesses. R.C. 2950.09(B)(1) and (C)(2).

{¶ 13} In making a determination as to whether an offender is a sexual predator, the judge must consider all relevant factors, including, but not limited to,

all of the following:  the offender's age;  prior criminal record;  the age of the victim of the sexually oriented offense;  whether the sexually oriented offense involved multiple victims;  whether the offender used drugs or alcohol to impair the victim or prevent the victim from resisting;  if the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sex offenders;  any mental illness or mental disability of the offender;  the nature of the offender's sexual conduct with the victim and whether that contact was part of a demonstrated pattern of abuse;  whether the offender, during commission of the offense, displayed cruelty or threatened cruelty;  and any additional behavioral characteristics that contribute to the offender's conduct.  R.C. 2950.09(B)(2)(a) through (j).

{¶ 14} The conclusion by the trial court that an offender is a sexual predator must be supported by clear and convincing evidence.  R.C. 2950.09(B)(3).  The offender and the prosecutor may appeal as a matter of right the judge's determination regarding sexual predator status.  *Id.*  In addition, upon expiration of the applicable time period, an offender who has been adjudicated a sexual predator may petition the court to obtain an entry stating that the offender is no longer a sexual predator.  R.C. 2950.09(D).

B

*Registration and Address Verification Provisions of R.C. Chapter 2950*

{¶ 15} The registration provision of R.C. Chapter 2950, R.C. 2950.04, applies to all offenders in all three classifications and became effective July 1, 1997. The requirement applies to offenders sentenced on or after that date, regardless of when the offense occurred, and to offenders who committed the offense before that date who were habitual sex offenders immediately before that date.  R.C. 2950.04(A)(1), (2), and (3).  Offenders must register with their county sheriff and

provide a current home address, the name and address of the offender's employer, a photograph, and any other information required by the Bureau of Criminal Identification and Investigation. R.C. 2950.04(A) and (C). In addition, sexual predators must provide the license plate number of each motor vehicle owned by the offender or registered in the offender's name. R.C. 2950.04(C)(2).

{¶ 16} Offenders must periodically verify their current home address. R.C. 2950.06. How often they must do so depends on the classification to which they belong. R.C. 2950.06(B). Sexually oriented offenders must verify their residential address with the county sheriff where they reside or are temporarily domiciled annually for ten years. R.C. 2950.07(B)(3) and 2950.06(B)(2). Habitual sex offenders must verify annually for twenty years. R.C. 2950.07(B)(2) and 2950.06(B)(2). Finally, sexual predators must register and verify their residential address every ninety days for life. R.C. 2950.07(B)(1) and 2950.06(B)(1).

{¶ 17} If the underlying offense was a felony, failure to comply with the registration and verification provisions is a felony. R.C. 2950.06(G)(1) and 2950.99. Further, sexual predators must fulfill these requirements for life or until the offender obtains a court determination that the offender is no longer a sexual predator. R.C. 2950.07(B)(1).

C

*Community Notification Provisions of R.C. Chapter 2950*

{¶ 18} The final primary provision of R.C. Chapter 2950 is community notification. These provisions apply to all sexual predators and to those habitual sex offenders who the trial court determines should be subject to the provisions. R.C. 2950.10(B) and 2950.11(F). The sheriff with whom the offender has most recently registered must notify particular community members within either seventy-two hours (adjacent neighbors, neighbors designated by the Attorney General, and law enforcement) or seven days (all others required to be notified) after the offender registers. R.C. 2950.11(A), (D)(1), and (D)(2). Among those

entitled to receive notice are all occupants of residences "adjacent to" the offender's place of residence, R.C. 2950.11(A)(1), local law enforcement agencies, R.C. 2950.11(A)(8) and (9), and certain officials responsible for the safety of children and other potential victims, R.C. 2950.11(A)(2), (3), (4), (5), (6), and (7). Further, upon request, certain victims are to be notified when specified offenders change address. R.C. 2950.10(A)(2).

{¶ 19} The community notice must include the offender's name, the address at which the offender resides, the sexually oriented offense of which the offender was convicted, and a statement that the offender has been adjudicated as being a sexual predator or a habitual sex offender. R.C. 2950.11(B)(1) through (4).

II

CONSTITUTIONALITY OF R.C. CHAPTER 2950

A

*Presumption of Constitutionality*

{¶ 20} Before we turn to the retroactivity and *ex post facto* analysis, we must note that statutes enjoy a strong presumption of constitutionality. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." *Id.* at 147, 57 O.O. at 137, 128 N.E.2d at 63. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; *State ex rel. Durbin*

*v. Smith* (1921), 102 Ohio St. 591, 600, 133 N.E. 457, 460; *Dickman*, 164 Ohio St. at 147, 57 O.O. at 137, 128 N.E.2d at 63.

{¶ 21} Accordingly, we begin with the strong presumption that R.C. Chapter 2950 is constitutional.

B

*The Retroactivity Clause of the Ohio Constitution*

{¶ 22} The court of appeals held that the application of R.C. 2950.09(B) to conduct prior to the effective date of the statute renders the statute unconstitutional as a retroactive law as prohibited by Section 28, Article II of the Ohio Constitution. Since the court of appeals held that R.C. 2950.09, if applied to the defendant, violates the Ohio Constitution, the court declined to address the issue of whether it violates the *Ex Post Facto* Clause of the United States Constitution. However, since the state raised this issue on appeal, we shall address it as well.

{¶ 23} First, we shall address the retroactivity of R.C. Chapter 2950. Section 28, Article II of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws."

{¶ 24} Statutes are presumed to apply only prospectively unless specifically made retroactive. R.C. 1.48. The issue of whether R.C. 2950.09 may be constitutionally applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. We find that the General Assembly so specified.

{¶ 25} First, R.C. 2950.09(C)(1) applies to those sex offenders who were convicted and sentenced prior to the effective date of the statute and are still imprisoned when the statute became effective. Second, the registration and verification requirements may be applied to certain sex offenders whose crimes occurred before the effective date. See, *e.g.*, R.C. 2950.04(A). Third, the community notification provisions apply regardless of when the offense was

committed. R.C. 2950.11(A). Finally, failure to comply with the registration and verification requirements constitutes a crime regardless of when the underlying offense was committed. R.C. 2950.06(G)(1) and 2950.99. Consequently, we find a clearly expressed legislative intent that R.C. Chapter 2950 be applied retrospectively.

{¶ 26} Having determined that R.C. 2950.09 meets the threshold test for retroactive application pursuant to R.C. 1.48, we must examine whether it violates Section 28, Article II of the Ohio Constitution.

{¶ 27} " 'Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective or retroactive.' " *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d at 496, quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630, 633.

{¶ 28} In order to determine whether R.C. Chapter 2950 is unconstitutionally retroactive under *Van Fossen*, we must determine whether R.C. Chapter 2950 is substantive or merely remedial. See *Van Fossen*, 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph three of the syllabus. A statute is "substantive" if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right. *Id.* at 107, 522 N.E.2d at 496. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right. *Id.* at 107, 522 N.E.2d at 497. A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively. See *id.* at 107, 522 N.E.2d at 496. Further, while we have recognized the occasional substantive effect, we have found that it is generally true that laws that relate to procedures are ordinarily remedial in nature. *Id.* at 107-108, 522 N.E.2d at 497,

citing *Wellston Iron Furnace Co. v. Rinehart* (1923), 108 Ohio St. 117, 140 N.E. 623, paragraph one of the syllabus.

{¶ 29} Initially, we observe that many of the requirements contained in R.C. Chapter 2950 are directed at officials rather than offenders. For example, there are requirements for the Department of Rehabilitation and Correction to determine whether to recommend that an already incarcerated offender be adjudicated a sexual predator (R.C. 2950.09[C][1]), requirements for the trial court to hold a hearing to determine whether the offender is a sexual predator (R.C. 2950.09[B]), requirements for county sheriffs to provide written notice of the offender's presence in the community (R.C. 2950.11[A]), requirements for the Attorney General (R.C. 2950.13), and requirements for the Department of Rehabilitation and Correction to provide certain information to the Bureau of Criminal Identification and Investigation (R.C. 2950.14[A]). Only the registration and verification requirements of R.C. Chapter 2950 require action by the defendant (R.C. 2950.04, 2950.05, and 2950.06).

{¶ 30} *Amicus curiae*, Ohio Public Defender, claims that the registration and notification provisions of R.C. Chapter 2950 are substantive because they impose additional burdens with respect to a past transaction. These statutes became effective in 1997; former R.C. Chapter 2950 was enacted in 1963. 130 Ohio Laws 669. However, under the former provisions, habitual sex offenders were already required to register with their county sheriff. Former R.C. 2950.02. Only the frequency and duration of the registration requirements have changed. Frequency of registration has increased to, in some cases, once every ninety days. R.C. 2950.06(B)(1). Duration has increased from ten years, former R.C. 2950.06, to, in some cases, life. R.C. 2950.07(B)(1). Further, the number of classifications has increased from one (habitual sex offender) under former R.C. 2950.01, to three (sexually oriented offender, habitual sex offender, sexual predator) under R.C. 2950.01.

**{¶ 31}** This court has held that where no vested right has been created, "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality." *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 807-808. The statute at issue in *Matz* was R.C. 2743.60(E), which prohibits those who had been convicted of a felony within ten years from collecting a Victims of Crime Compensation award. Matz was a crime victim who would have been eligible to receive a compensation award but for his prior felony conviction. While Matz's felony conviction occurred within the ten preceding years, it occurred before R.C. 2743.60(E) was enacted. We rejected the argument that the statute was retroactive because it attached a new disability to the felony he had committed before the law was enacted. We held that "[e]xcept with regard to constitutional protections against *ex post facto* laws * * * *felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation*." (Emphasis added.) *Id.*, 37 Ohio St.3d at 281-282, 525 N.E.2d at 808.

**{¶ 32}** In *Matz*, we noted that there are important public policy reasons for so holding. "For example, if [Matz's] theory were to prevail no person convicted of abusing children could be prevented from school employment by a later law excluding such persons from that employment." *Id.* at 282, 525 N.E.2d at 808. This example became the subject of legislation when R.C. 3319.39(B) was enacted in 1993. This statute prohibits school districts from employing those previously convicted of various criminal offenses. A second comparable statute is R.C. 2923.13, which prohibits certain persons from acquiring, having, carrying, or using any firearm or dangerous ordnance. In particular, persons previously convicted of felony offenses of violence are forever so prohibited, and those convicted of any first or second degree felonies are so prohibited for five years after release. R.C.

2923.13(A)(2) and (B). These are examples of statutes using past events to establish current status.

{¶ 33} Under *Van Fossen* and *Matz*, we conclude that the registration and address verification provisions of R.C. Chapter 2950 are *de minimis* procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950. As stated by the New Jersey Supreme Court in *Doe v. Poritz* (1995), 142 N.J. 1, 662 A.2d 367, "if the law did not apply to previously-convicted offenders, notification would provide practically no protection now, and relatively little in the near future. The Legislature reached the irresistible conclusion that if community safety was its objective, there was no justification for applying these laws only to those who offend or who are convicted in the future, and not applying them to previously-convicted offenders. Had the Legislature chosen to exempt previously-convicted offenders, the notification provision of the law would have provided absolutely no protection whatsoever on the day it became law, for it would have applied to no one. The Legislature concluded that there was no justification for protecting only children of the future from the risk of reoffense by future offenders, and not today's children from the risk of reoffense by previously-convicted offenders, when the nature of those risks were identical and presently arose almost exclusively from previously-convicted offenders, their numbers now and for a fair number of years obviously vastly exceeding the number of those who, after passage of these laws, will be convicted and released and only then, for the first time, potentially subject to community notification." *Id.* at 13-14, 662 A.2d at 373.

{¶ 34} Consequently, we find that the registration and verification provisions are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution.

{¶ 35} Although generally the registration and address verification provisions of R.C. Chapter 2950 were included in the former statute, the community notification requirements are new. These notification provisions recognize that the

risk of recidivism is higher among sex offenders than any other type of criminal, and the correspondingly high risk that sexual predators and habitual sex offenders pose to society. See Jerusalem, A Framework for Post-Sentence Sex Offender Legislation: Perspectives on Prevention, Registration, and the Public's "Right" to Know (1995), 48 Vand.L.Rev. 219, 221, fn. 5. The General Assembly drafted R.C. Chapter 2950 to provide the public with adequate notice and information about sex offenders so that communities can protect their children when sex offenders move into their neighborhoods.

{¶ 36} This court is not blind to the effects of the notification provisions of R.C. Chapter 2950. Offenders may become ostracized from society and even experience harassment. However, "an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right; infringement of more 'tangible interests' must be alleged as well." (Citation omitted.) *Borucki v. Ryan* (C.A.1, 1987), 827 F.2d 836, 842-843. Further, "[t]he harsh consequences [of] classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions." *State v. Lyttle* (Dec. 22, 1997), Butler App. No. CA97-03-060, unreported, 1997 WL 786216.

{¶ 37} As to the dissemination of information regarding the offender's status, a conviction has always been public record. The General Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders. We cannot conclude that the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety. In addition, this dissemination requirement imposes no burden on the defendant; the duty to notify

the community applies only to the sheriff with whom the defendant has most recently registered.

{¶ 38} Thus, we conclude that these dissemination provisions do not impinge on any reasonable expectation of finality defendant may have had with regard to his conviction for gross sexual imposition, and that he, therefore, had no substantive right in this regard.  See *Matz*, 37 Ohio St.3d at 281, 525 N.E.2d at 808.  Consequently, the General Assembly could permissibly impose these additional obligations without infringing on a substantive right.  Therefore, the notification provisions of R.C. Chapter 2950 do not violate the prohibition in Section 28, Article II against retroactive laws.  To hold otherwise would be "to find that society is unable to protect itself from sexual predators by adopting the simple remedy of informing the public of their presence."  *Doe v. Poritz*, 142 N.J. at 109, 662 A.2d at 422.

C

*The Ex Post Facto Clause of the United States Constitution*

{¶ 39} Defendant argues that R.C. Chapter 2950 "imposes new and additional duties which would classify the legislation as an ex post facto law."  Specifically, defendant argues that "[t]he statute herein is clearly punitive in nature.  Not only is a person labeled as a sexual predator, they [*sic*] are also required to re-register for their entire lifetime.  Further, the information is not only held for public inspection, but it requires broad dissemination by county or city officials.  Failure to register then is considered a felony act subject to harsh punishment."

{¶ 40} Section 10, Article I of the United States Constitution reads, "No State shall * * * pass any * * * ex post facto Law."  "*Ex post facto*" literally means "[a]fter the fact; by an act or fact occurring after some previous act or fact, and relating thereto * * * ."  Black's Law Dictionary (6 Ed.1990) 581.  In *Beazell v. Ohio* (1925), 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216, the United States Supreme Court stated:

15

"[A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, * * * is prohibited as *ex post facto*." *Id.* at 169-170, 46 S.Ct. at 68, 70 L.Ed. at 217.

{¶ 41} The purpose of the *Ex Post Facto* Clause is to ensure that legislative acts "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham* (1981), 450 U.S. 24, 28-29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23. The clause also prevents the legislature from abusing its authority by enacting arbitrary or vindictive legislation aimed at disfavored groups. See *Miller v. Florida* (1987), 482 U.S. 423, 429, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 359.

{¶ 42} As a threshold matter, the *Ex Post Facto* Clause applies only to criminal statutes. *California Dept. of Corrections v. Morales* (1995), 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588, 594; *Collins v. Youngblood* (1990), 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39. The United States Supreme Court has declined to set out a specific test for determining whether a statute is criminal or civil for purposes of applying the *Ex Post Facto* Clause. See *Morales*, 514 U.S. at 508-509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. However, the court has recognized that determining whether a statute is civil or criminal is a matter of statutory interpretation. *Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 631, 82 L.Ed. 917, 922; *Allen v. Illinois* (1986), 478 U.S. 364, 368, 106 S.Ct. 2988, 2990-2991, 92 L.Ed.2d 296, 304.

{¶ 43} Courts have used the "intent-effects" test to delineate between civil and criminal statutes for the purposes of an *ex post facto* analysis of sex offender registration and notification statutes.[4] See *Roe v. Office of Adult Probation* (C.A.2,

---

4. The term "intent-effects test" was coined by the court in *Russell v. Gregoire* (C.A.9, 1997), 124 F.3d 1079, 1084.

1997), 125 F.3d 47, 53-55; *Russell v. Gregoire* (C.A.9, 1997), 124 F.3d 1079; *Doe v. Pataki* (C.A.2, 1997), 120 F.3d 1263, 1274-1276. The "intent-effects" test was recently utilized by the United States Supreme Court in its *ex post facto* analysis of a Kansas statute permitting the state to institutionalize sexual predators with mental abnormalities or personality disorders that made it likely the offender would reoffend. *Kansas v. Hendricks* (1997), 521 U.S. 346, 353-369, 117 S.Ct. 2072, 2081-2085, 138 L.Ed.2d 501, 514-519. Accordingly, we apply the intent-effects test in this case.

**{¶ 44}** In applying the intent-effects test, this court must first determine whether the General Assembly, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other" and second, where the General Assembly "has indicated an intention to establish a civil penalty, * * * whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *United States v. Ward* (1980), 448 U.S. 242, 248-249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749.[5]

1

*Intent of R.C. Chapter 2950*

**{¶ 45}** In this prong of the analysis, we must determine whether the General Assembly's intent in promulgating R.C. Chapter 2950 was penal or remedial. A court must look to the language and purpose of the statute in order to determine legislative intent. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319, 1323; *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381-382.

---

5. We note that technically *Ward* addressed the prohibition against Congress passing *ex post facto* laws (Section 9, Article I of the United States Constitution) and this case deals with the prohibition against states passing *ex post facto* laws (Section 10, Article I of the United States Constitution). However, the rationale, as well as the test set out in *Ward,* is equally applicable to a state *ex post facto* analysis.

**{¶ 46}** R.C. 2950.02(A) states:

"(A) The General Assembly hereby determines and declares that it recognizes and finds all of the following:

"(1) If the *public is provided adequate notice and information about sexual predators, habitual sex offenders, and certain other offenders who commit sexually oriented offenses, members of the public and communities can develop constructive plans to prepare themselves and their children for the sexual predator's, habitual sex offender's, or other offender's release from imprisonment * * *.* This allows members of the public and communities to meet with members of law enforcement agencies to prepare and obtain information about the rights and responsibilities of the public and the communities and to provide education and counseling to their children.

"(2) Sexual predators and habitual sexual offenders pose a high risk of engaging in further offenses even after being released from imprisonment, * * * [and] *protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest.*

" * * *

"(6) *The release of information about sexual predators and habitual sex offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems* as long as the information released is rationally related to the furtherance of those goals.

"(B) The general assembly hereby declares that, in providing in this chapter for registration regarding sexual predators, habitual sexual offenders, and offenders who have committed sexually oriented offenses and for community notification regarding sexual predators and habitual sex offenders who are about to be or have been released from imprisonment * * * and who will live in or near a particular neighborhood or who otherwise will live in or near a particular neighborhood, it is

the *general assembly's intent to protect the safety and general welfare of the people of this state*. The general assembly further declares that it is the policy of this state to require the exchange * * * of relevant information about sexual predators and habitual sex offenders among public agencies and officials and to authorize the release in accordance with this chapter of necessary and relevant information about sexual predators and habitual sex offenders to members of the general public as a means of assuring public protection and that the exchange or release of that information is *not punitive*." (Emphasis added.)

**{¶ 47}** This language reveals that the General Assembly's purpose behind R.C. Chapter 2950 is to promote public safety and bolster the public's confidence in Ohio's criminal and mental health systems. The statute is absolutely devoid of any language indicating an intent to punish. In fact, the General Assembly specifically stated that "the exchange or release of [information required by this law] is *not punitive*." (Emphasis added.) Promulgating laws to guard society's health and safety is among those legitimate police powers inherent in government. *Miami Cty. v. Dayton* (1915), 92 Ohio St. 215, 223, 110 N.E. 726, 729. "Protecting the public and preventing crimes are the types of purposes [the Supreme Court has] found 'regulatory' and not punitive." *Artway v. New Jersey Atty. Gen.* (C.A.3, 1996), 81 F.3d 1235, 1264, citing *De Veau v. Braisted* (1960), 363 U.S. 144, 160, 80 S.Ct. 1146, 1154-1155, 4 L.Ed.2d 1109, 1120. Thus, R.C. Chapter 2950, on its face, clearly is not punitive because it seeks to "protect the safety and general welfare of the people of this state," which is a "paramount governmental interest." R.C. 2950.02(B) and (A)(2).

**{¶ 48}** R.C. Chapter 2950 essentially requires that offenders determined by a court of law to be a sexual predator, habitual sex offender, or sexually oriented offender must register with the sheriff's office in the county in which the offender resides. R.C. 2950.04. Registration with the sheriff's office allows law enforcement officials to remain vigilant against possible recidivism by offenders.

Thus, registration objectively serves the remedial purpose of protecting the local community.

{¶ 49} This intent is further evidenced by the General Assembly's narrowly tailored attack on this problem. For example, the notification provisions apply automatically only to sexual predators or, at the court's discretion, to habitual sex offenders. R.C. 2950.11(A), 2950.11(F), and 2950.09(E). Required dissemination of registered information to neighbors and selected community officials likewise is an objectively reasonable measure to warn those in the community who are most likely to be potential victims.

{¶ 50} Accordingly, we find that the General Assembly's intent with regard to R.C. Chapter 2950 is remedial, not punitive.

2

*The "Effects" of R.C. Chapter 2950*

{¶ 51} In determining whether a statute is punitive, a "civil label is not always dispositive." *Allen*, 478 U.S. at 369, 106 S.Ct. at 2992, 92 L.Ed.2d at 304. However, only the clearest proof will be adequate to show that a statute has a punitive effect so as to negate a declared remedial intention. *Id.; Flemming v. Nestor* (1960), 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435, 1448.

{¶ 52} There is no absolute test to determine whether a retroactive statute is so punitive as to violate the constitutional prohibition against *ex post facto* laws; such a determination is a "matter of degree." See *Morales*, 514 U.S. at 509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. However, the court in *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, fashioned useful guideposts for determining whether a statute is punitive. These guideposts include "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies

is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * * ." (Footnotes omitted.) *Id.*, 372 U.S.. at 168-169, 83 S.Ct. at 567-568, 9 L.Ed.2d at 661.

*Disability or Restraint*

{¶ 53} R.C. Chapter 2950 requires all classifications of sex offenders to register with the sheriff of the county in which the offender resides. R.C. 2950.04(A). The act of registering does not restrain the offender in any way. Registering may cause some inconvenience for offenders. However, the inconvenience is comparable to renewing a driver's license. Thus, we find that the inconvenience of registration is a *de minimis* administrative requirement.

{¶ 54} R.C. Chapter 2950 also requires that information be disseminated to certain persons. Admittedly, that information could have a detrimental effect on offenders, causing them to be ostracized and subjecting them to embarrassment or harassment. However, "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.' " *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. 767, 777, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767, 777, fn. 14, quoting *United States v. Halper* (1989), 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487, 501, fn. 7. In addition, the burden of dissemination is not imposed on the defendant, but rather on law enforcement.

{¶ 55} Accordingly, we find that R.C. Chapter 2950 imposes no new affirmative disability or restraint.

*Historical Registration and Notification Requirements*

{¶ 56} Registration has long been a valid regulatory technique with a remedial purpose. See, *e.g., New York ex rel. Bryant v. Zimmerman* (1928), 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (required registration of membership lists of corporations and associations permissible); *Lambert v. California* (1957), 355 U.S.

225, 78 S.Ct. 240, 2 L.Ed.2d 228 (city ordinance requiring all felons to register was a permissible law enforcement technique designed for the convenience of law enforcement agencies); *United States v. Harriss* (1954), 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (required registration of lobbyists).

{¶ 57} Similarly, R.C. Chapter 2950 has the remedial purpose of providing law enforcement officials access to a sex offender's registered information in order to better protect the public. Thus, the registration required by R.C. Chapter 2950 comports with registration requirements historically recognized by the United States Supreme Court. In fact, as mentioned above, Ohio has had a registration requirement since 1963.

{¶ 58} History does not tell us whether this sort of notification ought to be regarded as punishment. *Russell*, 124 F.3d at 1091. Thus, we must draw an analogy.

{¶ 59} Public access is an integral part of our legal system, "which necessarily entail[s] public dissemination of information about the alleged activities of the accused." *E.B. v. Verniero* (C.A.3, 1997), 119 F.3d 1077, 1100. Dissemination of such information is obviously detrimental to the reputation of the defendant, who is presumed innocent until proven guilty. But, "dissemination of such information in and of itself, however, has never been regarded as punishment when done in furtherance of a legitimate governmental interest." *Id.* at 1099-1100. This is because, absent compelling circumstances combined with a narrowly tailored remedy, common law and the First Amendment dictate that criminal trials are open to the public. See *Globe Newspaper Co. v. Norfolk Cty. Superior Court* (1982), 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248. Public access is necessary because "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and society as a whole." *Id.* at 606, 102 S.Ct. at 2619, 73 L.Ed.2d at 256. In other

words, the importance of public access prevails over the detrimental effect that the release of derogatory information may have on a defendant.

{¶ 60} By way of analogy, we find that this right to public access provides historical support for the notification provisions in R.C. Chapter 2950. The purpose of the notification provisions, which is to protect the public, must prevail over any ancillary, detrimental effect that the limited dissemination of the registered information may have on a sex offender.

{¶ 61} Accordingly, we find that the registration and notification provisions of R.C. Chapter 2950 find analogous historical support in the law.

### Element of Scienter

{¶ 62} There is no scienter requirement indicated in R.C. 2950.04. The General Assembly requires that offenders "shall register" pursuant to R.C. 2950.04(A). The act of failing to register alone, without more, is sufficient to trigger criminal punishment provided in R.C. 2950.99.

{¶ 63} Accordingly, we find that R.C. 2950.04 does not require scienter.

### Retribution and Deterrence

{¶ 64} *Amicus curiae,* Ohio Association of Criminal Defense Lawyers, argues that "the form and effect of [R.C. Chapter 2950] embraces [*sic*] the traditional notions of punishment, including retribution and deterrence." We disagree.

{¶ 65} In *Artway v. New Jersey Atty. Gen.,* 81 F.3d at 1255, the court stated:

"Retribution is vengeance for its own sake. It does not seek to affect future conduct or solve any problem except realizing 'justice.' Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior. Remedial measures, on the other hand, seek to solve a problem, for instance by removing the likely perpetrators of future corruption * * *." *Id.* at 1255.

{¶ 66} The registration and notification provisions of R.C. Chapter 2950 do not seek vengeance for vengeance's sake, nor do they seek retribution. Rather,

these provisions have the remedial purpose of collecting and disseminating information to relevant persons to protect the public from registrants who may reoffend.

{¶ 67} Further, R.C. Chapter 2950 does not, in and of itself, act as a deterrent. Deterrence presupposes that punishment will discourage a certain act. Black's Law Dictionary (6 Ed.1990) 450. Arguably, sexual predators are not deterred even by the threat of incarceration. R.C. 2950.02(A)(2). See, generally, *Hendricks*, 521 U.S. at ___, 117 S.Ct. at 2081, 138 L.Ed.2d at 515; *Doe v. Poritz*, 142 N.J. at 73, 662 A.2d at 404. Thus, statutes with a much lesser penal effect than incarceration, such as the notification provisions of R.C. Chapter 2950, will have little deterrent effect, if any. There may be some deterrent effect of registration in that the offender is on notice that he or she is being closely monitored. In addition, others so notified may guard against providing opportunities to the offender to reoffend. But these effects are remedial in nature and not punitive. Finally, even if one assumes that notification would have some deterrent effect, deterrence alone is insufficient to make a statute punitive. *United States v. Ursery* (1996), 518 U.S. 267, 292, 116 S.Ct. at 2135, 2149, 135 L.Ed.2d 549, 570, citing *Bennis v. Michigan* (1996), 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68.

{¶ 68} Accordingly, we find that R.C. Chapter 2950 does not promote the traditional aims of punishment—retribution and deterrence.

*Criminal Behavior*

{¶ 69} Even prior to the promulgation of the current version of R.C. Chapter 2950, failure to register was a punishable offense. See former R.C. 2950.99, 130 Ohio Laws 671. Thus, any such punishment flows from a failure to register, a new violation of the statute, not from a past sex offense. In other words, the punishment is not applied retroactively for an act that was committed previously, but for a violation of law committed subsequent to the enactment of the law.

{¶ 70} Accordingly, the behavior to which R.C. Chapter 2950 applies is already a crime.

*Alternate Remedial Purpose*

{¶ 71} As we have discussed, R.C. Chapter 2950 serves the purpose of protecting the general public from released sex offenders. In general, protection of the public is a paramount government function enforced through the police power. *Miami Cty. v. Dayton*, 92 Ohio St. at 223-224, 110 N.E. at 729. The fact that released sex offenders have a high rate of recidivism demands that steps be taken to protect members of the public against those most likely to reoffend. This is the role of R.C. Chapter 2950. Registration allows local law enforcement to collect and maintain a bank of information on offenders. This enables law enforcement to monitor offenders, thereby lowering recidivism. Notification provisions allow dissemination of relevant information to the public for its protection.

{¶ 72} Many federal courts considering similar registration and notification provisions for released sex offenders have echoed these conclusions and upheld similar statutes and provisions. See, *e.g.*, *Doe v. Pataki*, 120 F.3d at 1263; *Artway*, 81 F.3d at 1264-1265; *Doe v. Kelley* (W.D.Mich.1997), 961 F.Supp. 1105, 1109; *Doe v. Weld* (D.Mass.1996), 954 F.Supp. 425, 434-436; *Roe v. Office of Adult Probation*, 125 F.3d at 47; and *Russell*, 124 F.3d 1079, 1087-1088.

{¶ 73} Accordingly, we find that there is an alternate purpose, which may be rationally assigned to R.C. Chapter 2950, namely, protection of the public.

*Excessiveness in Relation to Alternate Purpose*

{¶ 74} Offenders must supply only their names, addresses, business addresses, photographs, fingerprints, and, in some instances, license plate numbers, and a statement disclosing that they have been adjudicated a sexual predator or habitual sex offender. R.C. 2950.04(B) and (C); 2950.07.

{¶ 75} The defendant argues that the lifetime address verification requirement for sexual predators is onerous. R.C. Chapter 2950 distinguishes

between three classifications of sex offenders—sexually oriented offenders, habitual sex offenders, and sexual predators. Sexual predators are by definition the most likely to reoffend. R.C. 2950.01(E). Thus, the more frequent verification requirement is not excessive, but is justified to enhance law enforcement's ability to monitor the whereabouts of the most dangerous classification of sexual offender. Further, sexual predators, classified as such by a court of law, have the opportunity to submit evidence to prove that their label is no longer justified and thereby have the label and its obligations removed. R.C. 2950.09(D)(1).[6]

**{¶ 76}** Similarly, address verification for habitual sex offenders and sexually oriented offenders is commensurate with the level of recidivism and dangerousness of these respective classifications. Habitual sex offenders must verify registration annually for twenty years, while sexually oriented offenders must verify annually for ten years. R.C. 2950.06(B)(2), 2950.07(B)(2) and (3).

**{¶ 77}** Thus, we find that the address verification requirements of R.C. Chapter 2950 are narrowly tailored to comport with the respective danger and recidivism levels of the different classifications of sex offenders.

**{¶ 78}** The defendant asserts that the notification provisions of R.C. Chapter 2950 are onerous because the registered information is available to any member of the general public. R.C. 2950.08. We disagree. Information, photographs, statements, and fingerprints, submitted by offenders for purposes of registration, are available for inspection only by law enforcement officials. R.C. 2950.08. Dissemination of the information required by R.C. 2950.11 is restricted to those most likely to have contact with the offender, *e.g.,* neighbors, the director of children's services, school superintendents, and administrators of preschool and day care centers. R.C. 2950.11(A). Thus, the notification provisions are likewise

---

6. Presumably, the offender could then be reclassified under one of the other sex offender categories, *i.e.*, habitual sex offender or sexually oriented offender.

narrowly tailored to disseminate information only to those persons necessary in order to protect the public.

{¶ 79} Finally, the registration/notification provisions of R.C. Chapter 2950 are far less restrictive and burdensome than the commitment statute approved by the United States Supreme Court in *Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed. 501. In *Hendricks,* the Supreme Court determined that a statute that allowed the state to involuntarily commit certain sex offenders was not a violation of the *Ex Post Facto* Clause.

{¶ 80} In *Hendricks,* the Kansas statute allowed an offender to be involuntarily committed as a "sexually violent predator," which was defined as " 'any person who has been *convicted of or charged with a sexually violent offense* and who *suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence*.' " (Emphasis added.) *Id.*, 521 U.S. at ___, 117 S.Ct. at 2077, 138 L.Ed.2d. at 509, quoting Kan. Stat. Ann. 59-29a02(a). Pursuant to R.C. Chapter 2950, a judge makes the determination, using certain factors the General Assembly has provided, such as whether the offender is at *future risk* to commit another sex offense, thereby classifying the offender as a sexual predator. R.C. 2950.09(B)(2). Thus, the test in *Hendricks* embodies the same components (prior conviction and a predisposition to commit future sex offenses) as the prerequisite requirements for registration under R.C. Chapter 2950.

{¶ 81} Further, the statute in *Hendricks* permitted the state to commit prior offenders, *i.e.*, to require them to forfeit their freedom. Certainly, loss of liberty, albeit through a civil commitment proceeding, is more akin to punishment than a requirement that offenders register and officials disseminate cautionary information about the offender to a narrow spectrum of the public and law enforcement officials. Yet, *Hendricks* determined that commitment in this context was not punishment pursuant to *ex post facto* analysis because the confinement of mentally unstable

persons who present a danger to the public is "a classic example of nonpunitive detention." *Hendricks*, 521 U.S. at ___, 117 S.Ct. at 2083, 138 L.Ed.2d at 516. Similarly, in the case at bar, we find that the registration and notification provisions of R.C. Chapter 2950 are nonpunitive and reasonably necessary for the intended purpose of protecting the public.

**{¶ 82}** In conclusion, the guidelines set forth in *Kennedy,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, while neither exhaustive nor dispositive, indicate that R.C. Chapter 2950 serves the solely remedial purpose of protecting the public. Thus, there is no clear proof that R.C. Chapter 2950 is punitive in its effect. We do not deny that the notification requirements may be a detriment to registrants, but the sting of public censure does not convert a remedial statute into a punitive one. *Kurth Ranch,* 511 U.S. at 777, 114 S.Ct. at 1945, 128 L.Ed.2d at 777, fn. 14. Accordingly, we find that the registration and notification provisions of R.C. Chapter 2950 do not violate the *Ex Post Facto* Clause because its provisions serve the remedial purpose of protecting the public.

## III

## SEXUAL PREDATOR DETERMINATION HEARING

**{¶ 83}** R.C. 2950.09(B)(1) requires the trial court to hold a hearing prior to sentencing to determine whether the offender is a sexual predator in cases where the offender has committed a sexually oriented offense on or after January 1, 1997, but has not been convicted of a sexually violent predator specification in the indictment. If the sexually oriented offense is a felony, the judge may conduct the hearing as part of the sentencing hearing required by R.C. 2929.19. R.C. 2950.09(B)(1). At the hearing, the offender and the prosecutor have the opportunity to testify, present evidence, and call and examine witnesses and expert witnesses regarding the determination of whether the offender is a sexual predator. *Id.* Further, the offender shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed. *Id.* The standard for determining

whether the offender is a sexual predator is by clear and convincing evidence. R.C. 2950.09(B)(3).

{¶ 84} R.C. 2950.01(E) provides:

" 'Sexual predator' means a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."

{¶ 85} As stated above, the General Assembly established criteria in R.C. 2950.09(B)(2) to aid trial courts in their determination of whether a particular offender is a sexual predator. The court of appeals held that on this record, the sexual predator determination was not supported by clear and convincing evidence because it was based solely on the presentence investigation report that the defendant allegedly did not have access to and that was not entered into the record. Therefore, we must review the hearing conducted by the trial court to determine whether it met the statutory criteria of R.C. 2950.09(B)(2).

{¶ 86} At the change-of-plea hearing on January 9, 1997, the trial judge informed the defendant in great detail of the new statute, which had just become effective eight days earlier on January 1, 1997. The judge stated the three classifications, outlined the registration and verification requirements, and explained that the failure to register and/or verify may be a felony. The judge also reviewed the specific facts of the count to which the defendant was pleading guilty. After accepting the plea, the judge informed both parties of the time and date of the sentencing and sexual predator hearing. R.C. 2950.09(B)(1).

{¶ 87} On February 14, 1997, the trial court held a sentencing hearing and made the determination that the defendant was a sexual predator. As part of the negotiated plea agreement, the state agreed to remain silent as to a sentencing recommendation. The trial court noted that it had in its possession the presentence investigation report as well as the victim impact statement. Defense counsel informed the court that his client had "a problem and he's had it for a long time"

and that the defendant "realizes he has a problem." In addition, counsel stated that "I know that society has to be protected from some sort of individuals, but the maximum sentence on this offense is not going to protect society for very long against Tony and it's not going to get him rehabilitated." Defendant's counsel revealed that defendant had a lengthy criminal history, as well as drug and alcohol problems.

{¶ 88} The trial judge, in reviewing the presentence investigation report, observed that the defendant was involved in an act of sexual contact with a girl in Florida in September 1995. Further, the judge considered the defendant's July 13, 1996 plea of guilty to disorderly conduct, which also involved sexual contact with a six-year-old and an eight-year-old. The judge noted that the current gross sexual imposition conviction stemmed from an offense occurring on July 16, 1997, just three days after his plea to another crime involving sexual contact with children. The trial judge also noted defendant's lengthy prior criminal history, drug and alcohol problems, and recent participation in several sexually oriented offenses.

{¶ 89} Based upon the presentence investigation report and the information supplied in court, the judge sentenced the defendant to two years' imprisonment and restitution to the victim for counseling expenses. The trial court further found the defendant to be a sexual predator and ordered the defendant to comply with the registration and verification requirements of R.C. Chapter 2950.

{¶ 90} The appellate court determined that the trial court erred in conducting the defendant's sexual predator determination hearing.[7] One basis for the appellate court's decision was the determination that the trial court relied on a presentence investigation report that constituted hearsay. We disagree. Evid.R.

---

7. Even though the appellate court held that the sexual predator classification had been unconstitutionally applied to the defendant, the court recognized that the defendant could still potentially be classified as a sex offender or habitual sex offender under the existing statute. Thus, the appellate court addressed defendant's assignment of error that attacked the trial court's procedure in conducting the sex offender classification.

101(C) excepts application of the Rules of Evidence, including the hearsay rule, from certain proceedings, such as miscellaneous criminal proceedings. Among those listed as specifically excepted from the Rules of Evidence are proceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise. Evid.R. 101(C). A sexual predator determination hearing is similar to sentencing or probation hearings where it is well settled that the Rules of Evidence do not strictly apply. A determination hearing does not occur until after the offender has been convicted of the underlying offense. Further, the determination hearing is intended to determine the offender's status, not to determine the guilt or innocence of the offender. Accordingly, we hold that the Ohio Rules of Evidence do not strictly apply to sexual predator determination hearings. Thus, reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge.

{¶ 91} We find that while this may not have been a model determination hearing, it was not so prejudicial so as to require a remand. When asked by defense counsel the basis for finding defendant a sexual predator, the court referred to the following: (1) the factors listed in the statute; (2) the defendant's prior sexually oriented offenses; (3) defendant's criminal conduct; and (4) defendant's past criminal record.

{¶ 92} Although the court of appeals determined that the defendant was not given access to the presentence investigation report, that conclusion is not supported in the record. Pursuant to R.C. 2951.03(B)(1), defendant or defendant's counsel is permitted to read the presentence investigation report prior to sentencing. In this case, defense counsel certainly demonstrated knowledge of the content of the presentence investigation report and made no challenge to its accuracy.

{¶ 93} Defense counsel presented additional statements such as his client's criminal history, use of alcohol, and need for assistance. Defense counsel never

requested to present additional evidence or testimony and never objected to the contents of the presentence investigation report. Because of the opportunity to present evidence and cross-examine witnesses, counsel had the full ability to challenge any aspects of the presentence investigation report that he felt were unreliable. Counsel never requested that the contents of the presentence investigation report be made part of the record, which would have been kept under seal. R.C. 2951.03(D)(3).

{¶ 94} While defense counsel differed with the judge over the treatment of a disorderly conduct charge, he did not object to the trial judge's reliance on the presentence report. Accordingly, the defendant has waived all but plain error. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 435-436, 613 N.E.2d 225, 229.

{¶ 95} Our review of the record persuades us that the defendant had a fair hearing, that he was ably represented by competent counsel, and that the court considered the criteria under R.C. 2950.09(B)(2), and fairly evaluated the defendant and his counsel's responses. Although the trial judge did not state that his findings were to a "clear and convincing standard," we presume that the judge followed the law. *State v. Martin* (1955), 164 Ohio St. 54, 59, 57 O.O. 84, 87, 128 N.E.2d 7, 12. The statute does not require the court to list the criteria, but only to "consider all relevant factors, including" the criteria in R.C. 2950.09(B)(2) in making his or her findings. We find here, from the evidence in the record, that the judge did so.

{¶ 96} "Sexual predator" is defined in R.C. 2950.01(E) as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Defendant's conviction of gross sexual imposition constitutes a conviction of a sexually oriented offense. R.C. 2950.01(D)(1). As for the likelihood that defendant would engage in the future in one or more sexually oriented offenses, the trial court had in its possession information regarding the 1995 incident involving sexual contact with a girl in Florida, as well as the 1996 disorderly conduct conviction

based on sexual contact with a six- and an eight-year-old.  This court finds no plain error on these facts.  Therefore, the determination that defendant is a sexual predator is not against the manifest weight of the evidence.

IV

CONCLUSION

**{¶ 97}** We hold that R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the Retroactivity Clause of Section 28, Article II of the Ohio Constitution. Further, we hold that R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the *Ex Post Facto* Clause of Section 10, Article I of the United States Constitution.

**{¶ 98}** Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's determination that the defendant is a sexual predator pursuant to R.C. 2950.01 and 2950.09.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————