Although I dissent from the opinion of the majority, I first observe that I do not take issue with the rationale expressed in several of the majority's analytical comments on Ohio's version of Megan's Law. For example, I concur with its view that revised R.C. Chapter 2950 is not a paradigm of legislative drafting. As noted by the majority, the statute contains redundancies and inconsistencies. Specifically, although the precise issue is not presented in this case, the fact that a sexually-oriented offender convicted of a misdemeanor offense may be labeled as a sexual predator for life is extremely troubling. Also, I question whether Megan's Law will achieve its premier stated goal of protecting the public. See R.C. 2950.02(B). See, generally,State v. Crawford (Sept. 25, 1998), Lake App. No. 97-L-245, unreported (Ford, P.J., dissenting).
However, in this writer's view, altruistically intended but questionable legislation does not unavoidably lead to the conclusion that a law is unconstitutional. Therefore, I would conclude that R.C. Chapter 2950 is not constitutionally unreasonable or arbitrary under the second prong of the test set forth in Benjamin v. Columbus (1957), 167 Ohio St. 103, paragraph five of the syllabus. Accordingly, I would hold that Ohio's version of Megan's Law does not violate Section 1, Article I of the Ohio Constitution.
First, it appears that the majority's analysis contains an inherent contradiction. Initially, the majority concludes that since R.C. Chapter 2950 does not require the offender's photograph to be included with the notification to the community, "the notice does nothing to help the members of the community to keep a watch for the `predator' in case he tries to abduct a loved one." However, the majority emphatically criticizes the statute for invading the offender's privacy, although the notice does not include his or her photograph. Therefore, it seems that the majority condemns Megan's Law for both being too invasive but paradoxically not as intrusive in some aspects as a cursory review would suggest.
Second, the majority substantially relies upon potential harm
to sexual predators that might give rise to constitutional violation. Specifically, the purported infringements are: (1) potential harassment of sexual predators, which constitutes an invasion of privacy; (2) prospective interference with the right of a sexual predator to obtain title to real property; and (3) interference with the ability of a sexual predator to obtain employment. The latter two of these factors obviously involve due process considerations. The majority concludes that Megan's Law "needlessly" interferes with these rights.
However, this approach of declaring a statute unconstitutional on the basis of possible future denial of constitutional rights obscures, to a significant degree, the basic tenet that duly enacted statutes are entitled to a presumption of constitutionality. State v. Cook (1998), 83 Ohio St.3d 404, 409;Dickman v. Defenbacher (1955), 164 Ohio St. 142, 147. Additionally, these claims of prospective harassment and interference with other rights are presently unsupported by empirical evidence.
Third, although use of the term "predator" has patently negative definitions, the mere selection of such diction does not rise to the crest of a constitutional violation. Moreover, in support of its claim of a right to privacy in this context, the majority relies on Housh v. Peth (1956), 165 Ohio St. 35. However, Housh involved a tort action for invasion of privacy, and does not elevate the right to privacy to constitutional status.
Finally, although the Supreme Court of Ohio has not yet addressed the issue of whether R.C. Chapter 2950 violates Section1, Article I of the Ohio Constitution, the court has sent a strong indication of the statute's constitutionality in its unanimous opinion in Cook, whose decibel waves buffet more than tangentially on the cliffs of constitutionality of Section 1, Article I of the Ohio Constitution in this context, although it is conceded that the express action was focused on different issues. In Cook, the Supreme Court of Ohio stated:
 "As to the dissemination of information regarding the offender's status, a conviction has always been public record. The General Assembly struck a balance between the privacy expectations of the offender and the paramount government interest in protecting members of the public from sex offenders. We cannot conclude that the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety. In addition, this dissemination requirement imposes no burden on the defendant; the duty to notify the community applies only to the sheriff with whom the defendant has most recently registered.
 "* * * Therefore, the notification provisions of R.C. Chapter 2950 do not violate the prohibition in Section 28, Article II against retroactive laws. To hold otherwise would be `to find that society is unable to protect itself from sexual predators by adopting the simple remedy of informing the public of their presence.' [Doe v. Poritz (N.J. 1995), 662 A.2d 367, 422.]" Id. at 413-414.
In light of this dicta in Cook, and the other foregoing reasons, this writer would reverse the judgment of the trial court, and remand the matter for proceedings consistent with the current version of R.C. Chapter 2950. _________________________________ PRESIDING JUDGE DONALD R. FORD