This is an appeal from the Athens County Court of Common Pleas.
Appellant Dykeman was convicted of corruption of a minor and sentenced to a definite term of two years in 1995. On August 6, 1997 the state filed its notice of intent to have Dykeman declared to be a sexual predator and a hearing was held on the matter. Dykeman objected on the grounds that R.C. 2950.09(C) was both an ex post facto law and violated the double jeopardy clause. The trial court overruled his objections and imposed the notice and duty to register requirements of R.C. 2950.03
and R.C. 2950.04.
Dykeman takes this appeal designating two Assignments of error.
ASSIGNMENT OF ERROR I
 "OHIO REVISED CODE CHAPTER 2950, AS APPLIED THROUGH SECTIONS 2950.04 AND 2950.09 TO CONDUCT PRIOR TO THE EFFECTIVE DATE OF THIS STATUTE, VIOLATES THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION."
 ASSIGNMENT OF ERROR II
 "OHIO REVISED CODE CHAPTER 2950, AS APPLIED THROUGH 2950.04 AND 2950.09 TO CONDUCT PRIOR TO THE EFFECTIVE DATE OF THIS STATUTE, VIOLATES THE RETROACTIVE CLAUSE OF THE OHIO CONSTITUTION."
Appellant Dykeman took this appeal knowing of this court's ruling in State v. Jones, unreported, Athens County Court of Appeals, May 6, 1998. In that case, this court upheld R.C.2950.03 and R.C. 2950.04 against claims based on the ex post facto clause of the U.S. Constitution and the retroactive clause of the Ohio Constitution. At the time of this appeal, however, there was a case, State v. Cook, pending before the Ohio Supreme Court on these very same issues, so it was necessary for appellant to pursue this appeal pending the outcome in the Supreme Court.
The Supreme Court has now ruled in State v. Cook (1998),83 Ohio St.3d 404, in paragraph one of the syllabus, that R.C.2950.09(B)(1) does not violate the retroactivity clause of Section 28, Article II, of the Ohio Constitution, and in paragraph two of the syllabus, that R.C. 2950.09(B)(1) does not violate the ex post facto clause of Section 10, Article I of the U.S. Constitution.
Therefore, based on the authority of State v. Cook, supra, we find that appellant's assignments of error are not well taken.
This court would, however, add a comment on R.C. 2950.03, 2950.04 and 2950.09. The action of the legislature in enacting these sections is a throwback to the ancient concept of attainder. Attainder was the extinction of civil and political rights upon conviction of treason or felony. One result of attainder was forfeiture and escheat whereby the income of one's land was forfeited to the crown and the land was escheated to the grantor. Another was the corruption of the blood whereby the felon was disqualified from inheriting, owning or transferring property, and his heirs were likewise disqualified from inheriting through him because they were in the tainted blood line. Attainder presumes that the evil, the propensity to commit crimes, was in the blood.
Attainder was, originally, a judicial process, but starting around the time of the fifteenth century, Parliament got into the act by passing bills of attainder. With the War of the Roses, the Tudors, the Glorious Revolution, Cromwell, and so on, political power shifted back and forth and it was common practice for the winning side, once they had gained control of Parliament, to enact bills of attainder against their former opponents. Often these bills of attainder were also ex postfacto in that they punished past conduct which was not illegal at the time.
Bills of attainder soon developed an aura of disrepute or even infamy because they were findings of criminal guilt based entirely on political considerations and made without any of the procedural safeguards afforded in the courts. The men who wrote our constitution had been, just a few years before, English subjects and they were well read in the history of England. They made sure that such things as ex post facto laws and bills of attainder would not be allowed in the United States.
The concept of attainder, however, lived on a bit longer. Many states in the nineteenth century still adhered to the idea of civil death for felons, but by the twentieth century, that practice was generally abandoned. In its place came the doctrine of paying one's debt to society — that is, when you commit a crime you have offended society and you must pay for that act. Implicit in this concept is the idea that once you have paid, whether by fine or by doing time, the debt is extinguished. This practice embodies the basic Judeo-Christian concepts of sin, atonement, forgiveness, and redemption. Today, when a convict is released at the conclusion of his sentence, he is restored to his full civil rights, although the vestiges of attainder still exist in state laws which prohibit ex-convicts from voting, holding certain jobs, running for office, etc.
R.C. 2950.01, et seq., returns us to the concept of the corruption of the blood. A person who has committed a non-sex offense is punished and released. A person who has committed a sex offense is examined at a hearing to determine if, in the words of the statute if he "* * * is likely to engage in the future in one or more sexually oriented offenses." Such a holding is a determination of tainted blood, or in today's parlance, tainted genes.
In all fairness one must accept that there is a certain degree of reasonableness in the concept of attainer. The disinherited son of a traitor is more likely than the average citizen to seek to overthrow the government that reduced him and his father to penury. The person who has committed one sexual offense is more likely than the average person to commit another. Whether attainder works in prevention of future crimes is questionable. It did not prevent future treasonous cabals in English history. Whether attainder will work in prevention of future sex crimes is just as problematical. Still, it establishes in Ohio law that people may be subject to government control not for what they have done, but for what they might do. This is a very dangerous branch to engraft on the tree of liberty.
The court specifically points out here that issue of attainder and the question of whether R.C. Chapter 2950 constitutes a bill of attainder was not raised in the lower court or in this appeal so the court's comments are entirely dicta. Still it is dicta that ought to have been said.
Having said that, this court can only hold that Assignments of Error I and II are overruled.
The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
HARSHA, J. KLINE, J. CONCUR IN JUDGMENT ONLY
For the Court
 BY: ____________________ Lawrence Grey, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
Lawrence Grey, retired judge of the Fourth District Court of Appeals, sitting by assignment of the Ohio Supreme Court in the Fourth District.