OPINION
On July 26, 1988, defendant, Edwin L. Pewo, was convicted of rape and kidnapping in violation of R.C. 2907.02 and 2905.01. Defendant's conviction and sentence were later upheld by this court on February 2, 1989. State v. Pewo (Feb. 2, 1989), Franklin App. No. 88AP-771, unreported.
After the enactment of H.B. 180, the Department of Rehabilitation and Correction recommended that defendant be adjudicated a sexual predator. Based upon that recommendation, on June 17, 1999, the Franklin County Court of Common Pleas held a hearing in compliance with R.C. Chapter 2950. The court reviewed the record, heard argument from counsel, and on July 23, 1999, issued a decision in which it concluded that the defendant is a sexual predator. The trial court's decision comprehensively outlines the factual background of this case. It provides as follows:
 The Court's task is to determine from all of the evidence, based upon only one sexual offense, whether this individual should be labeled a sexual predator. The transcript reveals a platonic friendship over a period of months between the defendant and the victim. On the date in question, they, along with several other individuals had been drinking heavily all afternoon and into the evening. The victim testified that she had consumed eight beers and three "Bloody Marys" over that period of time. She testified that she lay down on the couch in the living room to take a nap and awoke as she was being carried up the stairs and into a back bedroom. What occurred next can best be described as a gang rape by the Defendant, Charles Seiber and several other individuals who assisted in restraining the victim. * * *
The trial court continued, setting forth its analysis of the factors contained in R.C. 2950.09(B)(2)(a) through (j).
 The age of the offender and victim were similar in this case. Defendant has served eleven years of a seven to twenty five year sentence imposed by Judge Thompson. His projected maximum expiration of sentence is in 2013, when he will be fifty eight years of age. If he serves the entire twenty five year sentence, he is less likely as a man of almost sixty to recidivate than a young man of similar characteristics in his twenties.
 While the Defendant has prior violent offenses spanning two decades and at least two jurisdictions, this is the only sexual offense in his record.
 Clearly, alcohol impaired the judgment of everyone involved in this case. The question is whether it was knowingly used by the Defendant to impair the victim and thereby prevent her resistance. The victim testified to having consumed eleven drinks over the course of the afternoon and evening in question. The Defendant had been drinking for at least the same period of time. Testimony in the record reveals that while the victim napped, Defendant made at least one, perhaps two, additional trips to obtain more alcohol for the group; thus it is a fair assumption that Defendant and the other perpetrators were themselves impaired in their reasoning abilities by over consumption. There is nothing in the trial transcipt to indicate to this Court that Defendant knowingly used alcohol to impair the victim or to prevent her resistance. Instead, until the time she was carried upstairs, the victim had been drinking and carrying on with the rest of the group and according to her own testimony, she had no notice of Defendant's intentions and was shocked because she considered the Defendant a friend.
 The Court was presented with Certificates indicating that Defendant had participated in Positive Solutions programming, as well as Alcoholics Anonymous and Substance Abuse programming while incarcerated. These were ninety day and one hundred twenty day programs respectively which the Defendant completed in 1990 and 1991. There was no evidence presented indicating that Defendant had participated in any sexual offender programs while incarcerated. The Court is more concerned with Defendant's lack of any sexual offender programming than the fact that his last substance abuse program ended some eight years ago. The Court is aware that an inmate must request sex offender programming and that one of the requirements for successful completion is admitting one's guilt with respect to the sexual offense for which they were incarcerated. The lack of such programming after eleven years in prison indicates to this Court that Defendant is unwilling to acknowledge his guilt.
 The victim testified that several men including the Defendant, carried her from the couch in the living room, upstairs and into a back bedroom. Defendant told a young man to get some scissors and once obtained, Defendant used those scissors to cut the victim's blouse off while the others held her down. Her jeans and panties were removed and Defendant held those scissors to her neck as he vaginally, rectally, and orally raped her. The victim testified that when Pewo finished the first time, Charles Sieber raped her in similar fashion, and then Pewo and Sieber each raped her again. The other participants continued to hold her down while Pewo and Sieber alternated raping and restraining the victim. When the rape was over, the victim stated that Defendant kicked repeatedly in an apparent effort to get her on her feet and to cajole her to forget about the rape. The Court finds, that in cutting her blouse off and holding a scissors to her neck while raping her, and by kicking her afterwards in an attempt to intimidate her into forgetting about the rape, the Defendant displayed cruelty or made one or more threats of cruelty toward this victim.
 Finally, while there is no guidance in the statute regarding what type of behavioral characteristics the legislature had in mind when enacting R.C. § 2950.09(B)(2)(j), defendant's rape of this victim with the active participation of several other individuals demonstrates the type of abusive, destructive and dysfunctional thinking and behavior that this defendant was capable of in 1987. His prior record consists of arrests and convictions for domestic violence, aggravated menacing, robbery, burglary and several alcohol related offenses.
 Defendant's institutional record demonstrating completion of two substance abuse programs eight years ago, together with his presumed abstinence for the period he has been incarcerated, do little to allay the Court's concerns that this is a man who has failed to deal adequately with the person he is and the problems he has caused himself and others. Despite his age if released at maximum expiration of sentence, the Court is convinced that Defendant remains a person from whom the public and this victim must be protected in the future.
There are two types of sex offenders; habitual sex offenders, and sexual predators. R.C. 2950.01. A habitual sex offender is an individual who has been convicted of, or pleaded guilty to, a sexually oriented offense, and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses. R.C. 2950.01(B). A sexual predator, however, is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E).
By definition, sexual predators are those individuals most likely to re-offend. As such, they are subject to the most stringent registration and notification requirements set forth in R.C. Chapter 2950. State v. Cook (1998), 83 Ohio St.3d 404. Accordingly, the trial court correctly noted that a finding that an offender is a sexual predator must be supported by clear and convincing evidence. R.C. 2950.09(B)(3).
When determining whether an offender is a sexual predator, a trial court must consider all relevant factors, including, but not limited to, those set forth in R.C.2950.09(B)(2)(a) through (j). Those factors are: the offender's age; prior criminal record; the age of the victim; whether the sexually oriented offense involved multiple victims; whether the offender used drugs or alcohol to impair the victim or prevent the victim from resisting; whether the offender previously has been convicted of or pleaded guilty to any criminal offense; whether the offender completed any sentence imposed for the prior offense, and if the prior offense was a sex offense or a sexually oriented offense; whether the offender participated in available programs for sex offenders; whether the offender suffers from any mental illness or disability; the nature of the offender's sexual conduct with the victim and whether that contact was part of a demonstrated pattern of abuse; whether the offender displayed or threatened cruelty during commission of the offense; and whether there are any additional behavioral characteristics that contributed to the offender's conduct.
Once it has considered the factors of R.C. 2950.09(B), in addition to all other relevant factors, the court is charged with determining whether the state has shown, by clear and convincing evidence, that the offender is likely to re-offend. R.C. 2950.09(C)(2). Clear and convincing evidence is "[t]hat measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond reasonable doubt' in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122.
Defendant claims that the trial court failed to take into account his substance abuse treatment while incarcerated, his age, and the absence of disciplinary action. However, the court's decision clearly contradicts this position.
In its decision, the trial court directly addressed defendant's substance abuse treatment, as well as his complete lack of sexual offender counseling. Moreover, although the trial court did not make note of it in its written decision, we note that the exhibits admitted into evidence show that the defendant was charged with at least two disciplinary violations for the possession of intoxicating substances while incarcerated.
In regard to his age, although the court noted that defendant was less likely to re-offend than a similarly situated male in his twenties, that finding does not mean that the defendant is not at risk to re-offend. Indeed, in this case the trial court went on to find that he is.
The trial court also considered the defendant's prior criminal record, noting that it consists of "prior violent offenses spanning two decades and at least two jurisdictions." Our review confirms this finding. In fact, the record shows that the defendant has been arrested and/or convicted for at least the following offenses: (1) fugitive from justice; (2) carrying a concealed weapon; (3) multiple instances of robbery and attempted robbery; (4) multiple instances of burglary; (5) theft; (6) disorderly conduct; (7) domestic violence; (8) multiple instances of aggravated menacing; (9) rape; (10) kidnapping; (11) driving while under the influence; and (12) illegal transportation of liquor.
As noted by the trial court, although the defendant had been incarcerated for approximately eleven years prior to the hearing which gave rise to this appeal, the defendant has not yet participated in any available program for sexual offenders. Finally, as for the nature of this offense, the court explained in muted detail, the cruel, violent, and coordinated nature of the sexual assault upon the victim. Having independently reviewed the record, we find there is clear and convincing evidence that this defendant is likely to re-offend. State v. Bailey (July 15, 1999), Franklin App. No. 98AP-1132, unreported.
Having found the trial court's decision to be in accordance with the law, we overrule the defendant's assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
LAZARUS and GLASSER, JJ., concur.
GLASSER, J., retired of the Sixth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.