DECISION
Defendant, William Andrew Spencer, appeals from judgments of the Franklin County Court of Common Pleas sentencing defendant on charges of sexual battery and finding that defendant should be adjudicated a sexual predator pursuant to R.C. 2950.09.
On January 8, 1999, defendant was indicted on one count of rape, in violation of R.C. 2907.02, one count of sexual battery, in violation of R.C. 2907.03, two counts of kidnapping, in violation of R.C. 2905.01, and one count of intimidation of a crime victim or witness, in violation of R.C. 2021.04.
By entry filed April 19, 1999, the trial court found that defendant was presently mentally ill and subject to court-ordered hospitalization. The court placed defendant in the Twin Valley Psychiatric System to undergo treatment. In September 1999, a consulting psychologist submitted a report to the trial court indicating that defendant was capable of understanding the nature and objective of the proceedings against him, and the court subsequently set the matter for trial.
On January 16, 2001, defendant entered a plea of guilty to count two, sexual battery, and to the stipulated lesser-included offense of count three, also a sexual battery. By entry filed January 22, 2001, the trial court ordered the Franklin County Board of Mental Retardation and Developmentally Disabled ("FCBMRDD") to "provide services to the defendant."
The trial court conducted a hearing on July 6, 2001 regarding sentencing on the charges and on the issue of whether defendant was a sexual predator pursuant to R.C 2950.09. At the close of the hearing, the trial judge stated, "I will sentence the defendant to a period of five years of intensive supervision on community control; condition that he be placed at CDC." (Tr. July 6, 2001 at 22.) By judgment entry filed July 6, 2001, the trial court found defendant guilty of the two charges of sexual battery, and the court entered a nolle prosequi as to the remaining three counts. The court also made a finding that defendant is a sexual predator. The court's entry further provided in pertinent part:
 The Court hereby imposes a period of Community Control for FIVE (5) YEARS. In addition to the provisions of R.C. 2951.02 and the general requirements of the Franklin County Department of Community Control, as authorized by the Common Pleas Court and as given to the Defendant in writing, the Court imposes the following Community Control Sanctions * * *: Defendant is to be placed at the Columbus Developmental Center as soon as Probate is complete. Defendant shall be placed on Intensive Control Super-vision. Probation Department is to file an affidavit with Probate Court. Defendant will be held at Twin Valley until a bed is available at the Columbus Developmental Center.
The trial court filed a corrected judgment entry on July 13, 2001. On October 2, 2001, the trial court conducted a hearing, at which time the court noted that defendant had not been placed in the Columbus Developmental Center ("CDC") because that facility "found that he scored too high on his IQ, and * * * the decision they made was that he was moderately retarded." (Tr. Oct. 2, 2001 at 3.) The trial court heard testimony during the hearing regarding alternative placement for defendant, including the Sugar Creek facility in Lima. Jed Morrison, the superintendent of FCBMRDD, testified that, in his opinion, "Sugar Creek, which is a specific program * * * for offenders who have mental retardation * * * is to my knowledge the most appropriate setting for [defendant] at this particular point." (Tr. Oct. 2, 2001 at 19.) Marvin Connor, defendant's case manager, stated that, "[i]n the absence of CDC, I think Sugar Creek can provide the types of services that [defendant] would benefit from." (Tr. Oct. 2, 2001 at 27.)
At the conclusion of the hearing, the trial judge indicated that he would "resentence the defendant to the Department of Corrections and to raise the question with Dr. Brown at the DRC to make sure that we have an arrangement whereby [defendant] goes to Sugar Creek." (Tr. Oct. 2, 2001 at 41.) Counsel for defendant requested that the court, rather than impose a prison sentence, "order Franklin County Mental Health and Retardation Board to provide housing for [defendant] with 24 hour supervision." (Tr. Oct. 2, 2001 at 42.) While counsel indicated, "I'd love it if we could send him to Sugar Creek right now," counsel expressed concern that her client would not be able to be placed at Sugar Creek because there was a waiting list for individuals to be placed at that facility. (Tr. Oct. 2, 2001 at 43.)
On October 9, 2001, the matter again came before the court for hearing. At the hearing, the trial court indicated that the reason the court accepted a previous plea from defendant "was because of the planned placement." (Tr. Oct. 9, 2001 at 3.) At the hearing, Kathy Levering, identified as a social worker with the Public Defender's Office, related that she had spoken with Barbara Brown, an employee with the Department of Corrections "who runs the program for developmentally disabled people," and that Brown had agreed that defendant was "an appropriate candidate for Sugar Creek." (Tr. Oct. 9, 2001 at 3.) It was Levering's understanding that defendant's "transfer to Sugar Creek * * * should take place rather quickly." (Tr. Oct. 9, 2001 at 4.)
The trial court indicated that it was going to set aside the judgment entry filed July 6, 2001, placing defendant on community control because that sentence had been predicated upon defendant's acceptance at CDC. The trial court further stated that it was sentencing defendant to four years on count three and three years on count three, with the sentences to run consecutively to each other.
The trial court filed a "re-sentencing judgment entry" on October 11, 2001. The court's entry stated in part:
 On July 5, 2001, the Court imposed a period of Five (5) years Community Control under the provisions of R.C. 2951.02, and * * * the Court imposed the following Community Control Sanctions * * *: "Defendant is to be placed at the Columbus Developmental Center as soon as Probate is complete. Defendant shall be placed on Intensive Control Supervision * * *."
 On October 9, 2001, a re-sentencing hearing was held pursuant to R.C. 2929.19. * * *
 The basis upon which the defendant entered his plea and upon which the Court accepted the plea and agreed to sentencing to community control was his planned placement in the Columbus Developmental Center (CDC). Defendant was not accepted into CDC, hence the predicate for Community Control proved to be incorrect. The Court therefore set aside the defendant's sentence imposed on July 6, 2001 and offered the defendant the opportunity to withdraw his guilty plea; he chose not to do so.
* * *
 The Court has considered the purposes and principles of sentencing set forth R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14. The Court further finds that a prison term is not mandatory pursuant to R.C. 2929.13(F).
 The Court hereby imposes the following sentence: FOUR (4) YEARS, as to Count Two and THREE (3) YEARS, as to Count Three, to be served CONSECUTIVE to each other, at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.
 Pursuant to discussions between Kathy Levering of the Public Defender's office and Dr. Barbara Brown of the Department of Corrections, defendant shall be placed at the Sugar Creek facility at Lima and processed at the Mental Health Unit at the Corrections Reception Center. * * *
Defendant has filed notices of appeal from the trial court's "re-sentencing judgment entry" (assigned on appeal as case No. 01AP-1278) and the court's entry finding defendant to be a sexual predator (assigned on appeal as case No. 01AP-927). By journal entry, this court consolidated the cases for purposes of record filing and oral argument. In case No. 01AP-1278, defendant sets forth the following two assignments of error for review:
ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT ERRED WHEN IT VACATED ITS PREVIOUSLY ENTERED JUDGMENT ENTRY AND RESENTENCED THE DEFENDANT TO A PRISON TERM INSTEAD OF COMMUNITY CONTROL WHEN THE COURT HAD NO AUTHORITY TO VACATE ITS JUDGMENT ENTRY.
ASSIGNMENT OF ERROR NUMBER TWO:
 THE TRIAL COURT ERRED WHEN IT ORDERED THE TWO SENTENCES ON THE FELONY CONVICTIONS TO BE SERVED CONSECUTIVELY WITHOUT MAKING THE PROPER FINDINGS SUPPORTED BY THE UNDERLYING REASONS.
In case No. 01AP-927, defendant sets forth the following single assignment of error for review:
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT RELIED UPON UNRELIABLE HEARSAY STATEMENTS TO FIND THAT THE APPELLANT IS A SEXUAL PREDATOR IN VIOLATION OF THE APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO CONFRONT OR CROSS-EXAMINE ADVERSE WITNESSES AND DUE PROCESS OF LAW.
We will initially address the assignments of error raised by defendant in case No. 01AP-1278. Under his first assignment of error, defendant contends that the trial court erred in setting aside its judgment entry sentencing defendant to community control. Defendant frames the issue as whether a trial court can vacate a judgment entry and change a sentence if a planned placement, which served as the predicate for imposing community control sanctions instead of prison, subsequently proves to be unavailable. Defendant argues that the trial court can do so, but only where the right has been reserved. Defendant maintains that in the instant case the court did not properly reserve the right to change or modify the sentence. We disagree.
A review of the record indicates that the trial court's initial decision to sentence defendant to five years of intensive supervision on community control was based upon the express "condition that he be placed at CDC." (Tr. July 6, 2001 at 22.) Thus, the sentence to community control was conditional on the facility's acceptance of defendant. Further, defendant never began serving a sentence at CDC because that facility subsequently refused to accept him.
The state cites State v. Burnside (2000), Cuyahoga App. No. 76035, as analogous to the instant matter and as authority for the trial court's decision to resentence defendant. In Burnside, the defendant was charged with receiving stolen property, and defendant entered into a plea agreement with the state. At the time of sentencing, the prosecutor recommended that defendant be placed under community control sanctions. The trial court filed a journal entry of sentence, indicating that defendant was placed under the supervision of the adult probation department, and defendant was remanded to the county jail until a bed became available for inpatient treatment. The trial court conducted a later hearing on the matter, at which time defendant's probation officer brought to the court's attention that appellant had admitted she had been sentenced on another case on the same date as the original sentencing hearing. The trial court resentenced defendant to a jail term based upon the court's belief that it had been misled as to a material fact in its decision regarding the sentence.
On appeal, the court in Burnside affirmed the judgment of the trial court, holding in part that, "although it was merely a `sin of omission,' appellant's affirmative failure in this case to reveal to the trial court the pending charge against her prior to being sentenced amounted to a fraud on the court." Id. The court in Burnside relied in part upon United States v. Kendis (C.A.3, 1989), 883 F.2d 209, in which that court held that revocation of probation is permissible when acts of the defendant prior to sentencing constitute a fraud on the court.
In the instant case, while we would not find that the actions of defendant constituted a fraud on the court, the record indicates that the trial court, in initially seeking placement for defendant at CDC, relied in part upon representations by defendant's case manager at the July 6, 2001 hearing that later proved to be inaccurate. More specifically, the case manager, who stated that he had worked with defendant for the past eight years, represented that defendant was mentally retarded, and that he had spoken with individuals who indicated that defendant would be appropriate for CDC. Defendant was subsequently rejected for placement at CDC because he scored too high in testing. At the October 2, 2001 hearing, the case manager acknowledged that defendant could never be placed at CDC because his IQ was too high. Further, when asked by the trial court during the July hearing whether CDC had a lock-down facility, Connor stated that he believed "they do have some locked units." (Tr. July 6, 2001 at 21.) However, at the October 2, 2001 hearing, testimony by the superintendent of FCBMRDD indicated that facilities such as CDC did not have lock-down units.
Here, defendant expressly requested placement at CDC, and the trial court conditioned community control on his being accepted at that facility. Defense counsel also requested at the July hearing that defendant remain at the Twin Valley facility "until CDC accepts him rather than having him transferred to the jail first and then to CDC." (Tr. July 6, 2001 at 21.) The trial court agreed to allow defendant to remain at the Twin Valley facility. As noted, however, defendant was never approved for placement at CDC, and we agree with the state's contention that, because the sentence was expressly predicated upon a condition that ultimately proved impossible to fulfill, the trial court could legally consider resentencing. Further, where the facts indicate that defendant could never qualify for placement at CDC, defendant could have "no legitimate expectation" of finality in being able to serve a sentence of community control at that facility. State v. Hersom (1995),663 A.2d 3, 6 (where department suspended intensive supervision program, "defendant could have no legitimate expectation of finality in being able to serve her sentence under intensive supervision if officers to supervise her were not available"). Accordingly, we find that the trial court did not err in reconsidering the sentence. We also note in this case that, prior to the court's pronouncement of its sentence on October 9, 2001, the court afforded defendant an opportunity to withdraw his guilty plea. Based upon the foregoing, defendant's first assignment of error is overruled.
Under his second assignment of error, defendant asserts that the trial court erred in failing to make proper findings when it imposed consecutive sentences.
In State v. Scott Franklin App. No. 01AP-801, 2002-Ohio-2251, at ¶ 6-8, this court discussed the requirements for imposing consecutive sentences under Ohio's statutory scheme:
 Pursuant to R.C. 2929.14(E), the court may impose consecutive sentences for conviction of multiple offenses if the court finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 Further, when a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c) which requires that the sentencing court "make a finding that gives its reasons for selecting the sentences imposed." * * *
 The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). * * * Thus, after the court has made the required findings under R.C. 2929.14, it must then justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms. * * * The findings mandated by R.C. 2929.14(E) and R.C. 2929.19(B)(2) must appear somewhere in the record of sentence, either in the judgment entry or in the transcript of the sentencing hearing. * * * A trial court's failure to sufficiently state its findings and reasons requires remand for resentencing. * * *
In the present case, the trial court made the following statement at the sentencing hearing on October 9, 2001: "I have reviewed the facts in this case and the criteria for sentencing, and find that to impose anything but a consecutive sentence would demean the seriousness of this offense and would fail to protect the public, other people who may be — who might fall victim to Mr. Spencer." (Tr. Oct. 9, 2001 at 11.)
Upon review, we agree with defendant's contention that the trial court did not address whether consecutive sentences are disproportionate to the seriousness of defendant's conduct and to the danger he poses to the public. Because this is a required statutory finding, we conclude that this matter must be remanded to the trial court for resentencing in compliance with R.C. 2929.14. See Scott, supra. Defendant's second assignment of error is sustained.
We will next address defendant's single assignment of error in his appeal from the judgment of the trial court finding defendant to be a sexual predator. Under this assignment of error, defendant asserts that the trial court erred in relying upon hearsay statements in making its determination. Specifically, defendant argues that the trial court considered allegations by the victim in this case concerning a second sexual assault by defendant alleged to have occurred approximately one week prior to the incident for which defendant was charged. Defendant also argues that the court considered allegations in the presentencing investigation ("PSI") report that defendant had been accused of killing his mother.
Under a section titled "family history," the PSI report states that the defendant's mother died in 1991 as a result of a gunshot to the chest, and that records indicate that defendant shot his mother and was charged with murder. The report states that "[i]t is not clear as to why the charges were dismissed," but that a psychologist declared defendant to be not competent to waive his Miranda rights. The report suggests that defendant "may have been incompetent to waive his Miranda Rights and apparently the case was nolled." The report further states, however, that most of defendant's family history is derived from information "provided by the defendant according to cited sources," and "[t]herefore, accuracy of some information is questionable."
At the sexual predator classification hearing, counsel for defendant made an objection to the PSI report based upon hearsay information contained therein. Regarding the sexual assault incident giving rise to the charges of sexual battery in the instant case, the trial court noted that the victim of the sexual assault "had reported this had happened one other time." (Tr. July 6, 2001 at 16.) Also during the hearing, the trial court raised the issue of the shooting of defendant's mother, and the court noted that, while defendant was not competent at the time of trial regarding the incident, "there is a concern." (Tr. July 6, 2001 at 16.)
Although not supported by evidence in the record, defendant contends in his appellate brief that the defense counsel who represented defendant on the murder charge was "convinced that the defendant had been set up to take the blame by his stepfather." (Defendant's appellate brief at 5.) Defendant argues that, if the allegations in the report are true and the charges were dismissed after a ruling that defendant was not competent to waive his Miranda rights, this suggests that the allegations were based upon defendant's confession and not much else. It is further contended that, if at the time of the alleged incident, defendant had the communication skills of a three or four year old, as indicated in the report, charges based solely upon such a confession would be essentially worthless.
Defendant acknowledges language in State v. Cook (1998),83 Ohio St.3d 404, 425, indicating that the Rules of Evidence do not strictly apply in sexual predator classification proceedings, and therefore "reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge." Defendant, however, relies on this court's decision in State v. Bowers (2001), Franklin App. No. 00AP-1453, in which the defendant contended that the trial court improperly relied upon unreliable hearsay statements contained in a PSI report. In Bowers, this court held in part:
 We find that, although it is well-settled pursuant to Cook and subsequent cases that information in a PSI report may be considered by the court at a sexual predator classification hearing, this is not a blanket rule regarding the admissibility of any and all statements, no matter how lacking in indicia or reliability, to be found within the PSI. The broadening of the scope of admissible evidence for sentencing hearings, probation hearings, and by analogy sexual predator classification hearings, is not unlimited but nonetheless subject to the fundamentals of due process. * * * Without adopting the specific restrictions on admissibility of hearsay, based upon the right to confrontation, which are developed in the above-cited federal authorities, we nonetheless find that statements adopted from a PSI report must bear some indicia of reliability beyond a mere prejudicial allegation of past misconduct, without specifying source, nature, or origin of the information. * * *
In the present case, to the extent that the trial court relied upon statements by the victim of the sexual assault indicating that a similar incident had occurred within a one week time period, the court may have reasonably concluded that the hearsay allegations had some indicia of reliability and that they were not in conflict with other information in the report. We note that, while the report indicates that defendant initially denied any contact or involvement with the victim, the report states that defendant subsequently told police detectives that "the assaults had occurred, but that they were consensual."
More troublesome is the trial court's reference during the hearing to the allegations in the "family history" section of the PSI report that defendant shot his mother. Although the PSI report states that records indicate that defendant was charged with murder, the circumstances surrounding the allegation in the report that defendant shot his mother are unclear. As previously noted, the author of the PSI report states that "most" of the information regarding defendant's family history was provided by defendant, and therefore the accuracy of some of the information is "questionable." However, it is uncertain what portions of the report the author may have deemed to be unreliable, and we believe that the record in this case raises serious questions as to the reliability of this hearsay evidence. It is also uncertain as to how much weight the trial court placed on this incident in its determination the defendant should be adjudicated a sexual predator, but the allegation is serious, and the fact that the trial court specifically cited the incident suggests that the court considered the allegation in reaching its determination. Because of our concern about the reliability of this information and the role it played in the court's sexual predator finding, we conclude that defendant is entitled to a new hearing on the issue of his classification as a sexual predator.
Accordingly, defendant's assignment of error is sustained and this matter is remanded for further proceedings.
Based upon the foregoing, in case No. 01AP-1278, defendant's first assignment of error is overruled, defendant's second assignment of error is sustained, and the judgment of the trial court is affirmed in part and reversed in part; in case No. 01AP-927, defendant's single assignment of error is sustained, and the judgment of the trial court is reversed and this matter is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law and consistent with this decision.
Judgment in case No. 01AP-1278 affirmed in part, reversed in part, and cause remanded;
Judgment in case No. 01AP-927 reversed and cause remanded.
BRYANT and KLATT, JJ., concur.