JOURNAL ENTRY and OPINION
The court classified defendant Mark Ellison as a sexual predator based on 1981 convictions for sexual battery and gross sexual imposition against two young boys. Ellison's sole assignment of error contests the classification.
The court may classify an offender as a sexual predator when it finds by clear and convincing evidence that the offender is likely to engage in the future in one or more sexually oriented offenses. See R.C. 2950.01(E). The classification should be based on consideration of the factors set forth in R.C. 2950.09(B)(2), although the court has discretion to determine what weight, if any, he or she will assign to each guideline. State v. Thompson (2001), 92 Ohio St.3d 585, paragraph two of the syllabus. Moreover, the court has discretion to consider any other evidence that the court deems relevant to its classification determination. Id.
The discretion given to the court necessarily means that our review is deferential. For that reason, we employ a manifest weight of the evidence standard on appeal. See State v. Cook (1998), 83 Ohio St.3d 404; State v. Childs (2001), 142 Ohio App.3d 389, 395. Judgments supported by competent, credible evidence will not be overturned on appeal. See State v. DeHass (1967), 10 Ohio St.2d 320; C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. It should go without saying that we are not permitted to substitute our judgment for that of the trial court, no matter how much we might disagree with the court's fact finding.
See State v. Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277, 280
(The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact.).
At the age of twenty-one, Ellison enticed two boys, ages six and ten, into his house by promising them a bicycle. Once alone, he removed their trousers, kissed and fondled them, and forced the ten-year-old to give him oral sex. The boys escaped when someone knocked on the door. The boys told their parents, and the police were called. Ellison was arrested that same day. He claimed that he had been under the influence of drugs and alcohol at the time, but did not specifically disavow the sexual conduct.
Ellison pleaded guilty to sexual battery and gross sexual imposition. The court suspended his sentence and placed him on probation. Ellison violated that probation in 1982 by moving to West Virginia without first notifying his probation officer. When he applied for a state of West Virginia driver's license, the West Virginia State Patrol discovered that he had an outstanding capias from Cuyahoga County. He was arrested, returned to Ohio and ordered to serve his original sentence.
The sexual predator hearing provided evidence of several factors listed in R.C. 2950.09(B)(2). The court could find the age of the victims relevant, and could also find significant that Ellison lured or enticed the boys. The court could rationally find that the boys, because of tender years, lacked the ability to resist Ellison's offer of a bicycle in return for sex. The evidence also showed that Ellison himself had been sexually abused as a child, and he believed this might explain his sexual attraction to young boys. Finally, Ellison refused to accept treatment while incarcerated, suggesting that he failed to accept responsibility for his actions.
In support of his argument against the sexual predator classification, Ellison claims that he has maintained stable family relationships over the years, has been sober since 1988, and has not reoffended in any way. He also cites to a psychological report which listed him as a low to moderate risk of reoffending.
Evidence that Ellison has been sober since 1988 is potentially promising, but is not particularly significant because for the last seven years he has been incarcerated. This is an involuntary sobriety, and it remains to be seen whether he has the fortitude to abstain from intoxicating substances upon release. But in any event, an offender is necessarily sober in prison, where alcohol is generally unavailable. The court could validly discount evidence concerning Ellison's absention from drugs or afford that factor very little, if any weight. For the same reasons, the stability of Ellison's personal relationships is likewise irrelevant.
The court was not obligated to give the psychological report any great weight. The utility of the STATIC-99 evaluation as a diagnostic tool for individual risk assessment is open to question. The evaluation merely performs an actuarial assessment of an offender's chances of reoffending. See State v. Colpetzer (Mar. 7, 2002), Cuyahoga App. No. 79983. While actuarial risk assessments are said to outperform clinical risk assessments, actuarial assessments do not, and cannot, purport to make a prediction of a particular offender's future conduct. In fact, the use of an actuarial assessment could arguably be at odds with Ohio's statutory scheme. R.C. 2950.01(E) and R.C. 2950.09(B) require a determination that the offender is likely to engage in the future in one or more sexually oriented offenses. This is an individualized determination for a particular offender. The STATIC-99 cannot purport to make an individualized assessment of future conduct any more than a life expectancy table can provide a accurate prediction of a particular individual's longevity.
That Ellison tested within normal limits on an MMPI-2 evaluation is likewise not particularly noteworthy. Studies suggest that many sexual offenders test within normal limits. See, e.g., Baker, Once A Rapist? Motivational Evidence and Relevancy In Rape Law (1997), 110 Harv.L.Rev. 563, 576-578 (reviewing data regarding the normality of rapists). If pedophiles can be classified as normal it might be time to question just what term normal means.
The MMPI result finding Ellison within the normal range appears to be undercut in large part by various data relating to the recidivism rate among sexual offenders. When considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated that:
 Evidence suggests that child sex offenders are generally serial offenders. Indeed, one recent study concluded the behavior is highly repetitive, to the point of compulsion, and found that 74% of imprisoned child sex offenders had one or more prior convictions for a sexual offense against a child. See H.R. Rep. No. 392, 103d Congress (1993). In State v. Eppinger (2001), 91 Ohio St.3d 158, 159-162, the Supreme Court also recognized the increased risk of recidivism for pedophiles:
 Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters.
 Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis (1997), 21 Law Human Behavior 635, 651.
* * *
 In some instances, offenders will have several sexually oriented convictions, or will clearly fit a variety of the factors listed in R.C. 2950.09(B)(2)(a) through (j). An offender who preys on children, for example, may fit the pedophile profile, a class of sex offenders known for their especially high rate of recidivism.
(Emphasis added.)
The sobering statistical evidence cited by the United States Congress and reviewed in Eppinger cannot be ignored. The high risk of recidivism with child sex offenders would tend to dispel any notion that they could be considered normal in a sense understood by the public.
It has been suggested that the court overstepped its authority by injecting its own personal knowledge garnered during years of social work, but otherwise not in evidence, into the proceedings.
We disagree. The court stated:
 * * * I can say almost certainly that the time he was molested by the second person was also the time he had been a reasonably good student, he was going to school, doing all the things, didn't give the teachers any problem. He indicates that he was molested a second time and after the second time he literally sort of washed out, stopped going to school, stopped participating. He just gave up.
It may never be known exactly why Ellison's life took a turn for the worse, but the reason for that turn is not as critical to the court's classification as has been suggested. The fact remains that Ellison went from the abused to abuser. The court had every right, as the trier of fact, to draw conclusions from this fact. And the court's finding takes on a greater significance in light of Ellison's pointed refusal to undergo treatment while incarcerated. Ellison's reason for refusing treatment that the program was a joke spoke poorly of his ability to grasp the extent of his problem. The court validly considered this cavalier attitude toward treatment as suggesting that Ellison had not taken the necessary steps to control his problems.
The Ohio Supreme Court's decision in Thompson has removed all doubt as to the trial court's expansive fact-finding function in sexual predator classifications. The Supreme Court stated:
 The guidelines also do not provide an exclusive list of factors to consider when determining whether an offender is a sexual predator. This is evidenced by the General Assembly's use of the phrase directing courts to "consider all relevant factors, including, but not limited to, all of the following [factors]." R.C. 2950.09(B)(2). * * * The phrase "including, but not limited to" "indicates that what follows is a nonexhaustive list of examples." Thus, the "factors" enumerated in R.C. 2950.09(B)(2) are merely a nonexhaustive list of examples that a court must consider in a sexual predator hearing. Accordingly, a judge may consider evidence other than those factors listed in R.C. 2950.09(B)(2) that he or she believes is relevant to determining recidivism. (Emphasis sic.) (Citations omitted). 92 Ohio St.3d at 281.
At this point, it is appropriate to comment that a panel decision in State v. Krueger (Dec. 19, 2000), Cuyahoga App. No. 76624, is not controlling. Krueger had been diagnosed as a pedophile after committing dozens of acts of sexual abuse against two different children, one of whom was only six years of age. The evidence showed that at the time, Krueger used the girls as surrogates because lack of sex from a girlfriend weakened his resolve. He steadfastly denied that he forced the girls to do anything improper, apparently maintaining that the sex acts he performed were truly consensual. When considering a sexual predator classification, the trial judge noted that literature in the field of pedophilia indicated that it was an incurable condition that could only be controlled through environmental factors.
The Krueger majority took issue with the trial judge's reference to pedophilia literature, suggesting that the literature had to be introduced into evidence. The Krueger majority went on to question the validity of many judicial statements concerning the high recidivism rate among child molesters, claiming that the courts had accepted such factual assertions without first making a critical assessment of the veracity of such statements.
Krueger cannot be considered as authority for the proposition that a trial court cannot rely on obvious statistical data relating to recidivism of child molestors. At least one other judge of this court has cogently described Krueger as being unnecessary and inappropriate and, in any event, doubtful precedent upon which to rely. See State v. Smith (Nov. 21, 2001), Cuyahoga App. No. 78823 (Rocco, J., concurring).
At any rate, the Ohio Supreme Court's citation to recidivism rates among child molestors in Eppinger, a decision released after the panel decision in Krueger, should dispel any argument that the trial courts cannot give weight to recidivism factors as they are commonly known. Moreover, the General Assembly has likewise stated that it passed the sexual predator laws in part because sexual predators pose a high risk of engaging in further offenses even after being released from imprisonment * * *. See R.C. 2950.02(A)(2). These statements from the legislature and the highest court of this state should end any notion that the courts are not permitted to consider recidivism rates as they might impact on a sexual predator classification for a particular offender. Hence, the court could validly consider general data of recidivism rates for sexual offenders along with Ellison's own history of abuse and his refusal to seek any treatment for his past pedophilia as factors that would indicate a likelihood of reoffending. This conclusion fell within the statutory framework of another factor relevant to determining recidivism.
Because the court engaged in fact finding, we must be extremely reluctant to reverse this sexual predator determination, particularly where the offender is an admitted child molester. Ellison's sexual predator classification was supported by competent credible evidence showing clearly and convincingly that he was likely to commit a sexually oriented offense in the future. The assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN PRESIDING JUDGE TERRENCE O'DONNELL, J., CONCURS. ANNE L. KILBANE, J., DISSENTS WITH SEPARATE OPINION ATTACHED.