OPINION
{¶ 1} Defendant-appellant, Robert A. McClellan, appeals from the November 29, 2001 Franklin County Court of Common Pleas decision and entry adjudicating appellant as a sexually oriented offender. For the reasons that follow, we affirm the judgment of the trial court.
{¶ 2} In May 1992, appellant was indicted on three counts of aggravated murder, one count of kidnapping, one count of aggravated robbery, and one count of having a weapon while under disability. Each count on the indictment carried a specification. All six counts were the result of events that occurred on April 26, 1992, which resulted in the murder of Octavia W. Ray.
{¶ 3} On Sunday, April 26, 1992, appellant was at the home of Charles Banner, where guests played cards, drank, and watched television. Charles Smith, appellant's cousin and Octavia's boyfriend, approached appellant and asked if he could give Octavia a ride home. Appellant agreed to give Octavia a ride home. At approximately 10:15 p.m., Octavia agreed to take the ride home, and got into appellant's car.
{¶ 4} At 11:56 p.m., Columbus Police Officers were dispatched to the Triad Lounge where a dead woman's body was found. The victim was laying on her back on the sidewalk, with her legs extended, and slightly parted. The victim's buttons on her blouse were undone, her black bra was pulled up toward her neck, exposing her breasts, her panty was still in place, but her jeans were unbuttoned and pulled down over her tights. The victim had sustained three gunshot wounds to the right side of her head. Blood was pooled beneath the victim's head, and smeared on her face and bare breasts. Small aqua colored fibers were found on the victim's blouse, on the pavement beside her, and on her breast. As the victim had no identification, the officers labeled her as "Jane Doe."
{¶ 5} That following morning, at 7:20 a.m., Columbus Police Officers were dispatched to the home of Leotis and Hyler Ray, Octavia's parents. Mr. and Mrs. Ray had filed a report that Octavia never came home the night before. Mr. Ray indicated that he was aware appellant was supposed to have brought Octavia home. After speaking with the Rays, the officers realized that Octavia's description matched that of Jane Doe. As a result, Mr. Ray went to the Franklin County Morgue where he positively identified Jane Doe as Octavia.
{¶ 6} On April 27, 1992, a detective arrived at appellant's home where appellant was questioned. Appellant admitted to giving Octavia a ride, but denied shooting her. Appellant told the detective that he dropped Octavia off at a Church's Chicken Restaurant. The detective informed appellant of certain items found on and near Octavia's body that resulted in the need to search appellant's car. Appellant was informed of his constitutional rights, consented to the search of his vehicle, and signed a consent to search form. A detective from the crime scene search unit searched appellant's car and found aqua fibers that were later determined to be the same aqua fibers found on or around Octavia's body.
{¶ 7} On May 7, 1992, appellant was arrested at his home, and charged with one count of aggravated murder. On March 5, 1993, appellant pled guilty to the lesser offense of murder with a firearm specification. Appellant was sentenced to 15 years to life with an additional three years actual incarceration for the firearm specification to run consecutively.
{¶ 8} On November 20, 2001, pursuant to H.B. No. 180 and R.C. Chapter 2950, the trial court conducted a sexual predator hearing at the request of the Ohio Department of Rehabilitation and Corrections ("DRC"). At the hearing, the state and appellant introduced several exhibits into evidence: appellant's indictment; appellant's entry of guilty plea; the March 8, 1993 sentencing entry; sexual predator screening instruments; the transcript of the May 9, 1991 proceeding in the Circuit Court for Baltimore, Maryland; portions of DRC's master file; certificates; an inmate evaluation report; a letter from Catholic Social Services; and substance abuse attendance records. Appellant also testified at the hearing.
{¶ 9} In a decision rendered on November 29, 2001, the trial court held that the evidence the state submitted did not amount to clear and convincing evidence to adjudicate appellant as a sexual predator. In the alternative, the trial court held that appellant "has not contested that he was convicted of a sexually oriented offense, he is found to be a sexually oriented offender." (November 29, 2001 Decision and Entry Adjudicating Defendant as a Sexually Oriented Offender, 4.) It is from that judgment entry that appellant appeals, raising the following sole assignment of error:
{¶ 10} "The trial court erred by finding than [sic] the appellant is a sexually oriented offender when the court had no authority to make this adjudication. This resulted in prejudice to the appellant since he had never been convicted of a sexually oriented offense since his murder charge never contained sexual motivation specifications. The court further erred by factually concluding that the appellant did not contest that `this is a sexually oriented offense.' "
{¶ 11} In his sole assignment of error, appellant sets forth several arguments. First, appellant contends that R.C. 2950.09 does not give the trial court authority to adjudicate appellant as a sexually oriented offender, and because the trial court exceeded its authority in adjudicating appellant as such, appellant was prejudiced. "While it is true that a literal reading of R.C. 2950.09(C) limits the trial court in a sexual-predator hearing to a determination of whether or not the defendant is a sexual predator * * * other classifications may apply by operation of law to trigger registration and/or community-notification provisions." State v. Sturgeon (1998), 131 Ohio App.3d 538, 540. "A trial court adds nothing by classifying a defendant as [a sexually oriented offender] and the offender is not prejudiced as the individual has in fact committed a sexually oriented offense as defined by statute." State v. Goodballet (Mar. 30, 1999), Columbiana App. No. 98 CO 15. Therefore, the trial court did not exceed its authority when it adjudicated appellant as a sexually oriented offender at the sexual predator hearing.
{¶ 12} Second, appellant argues that the sexually oriented offender classification arises by operation of statute and depends upon the offense the offender was convicted of, not by the judgment of the trial court. While we agree with appellant that this classification arises by operation of law, the Ohio Supreme Court has recognized that the sexually oriented offender classification arises from a finding by the trial court. State v. Cook (1998), 83 Ohio St.3d 404, 407 ("[u]nder the new system, a sentencing court must determine whether sex offenders fall into one of the following classifications: (1) sexually oriented offender; (2) habitual sex offender; or (3) sexual predator. R.C.2950.09"). See, also, State v. Washington (Nov. 2, 2001), Lake App. No. 99-L-015 ("a defendant's status as a sexually Oriented offender * * * arises from a finding rendered by the trial court"). Under the law applicable to appellant, a sexually oriented offender was a person who committed an offense enumerated in former R.C. 2950.01(D)(3) "with a purpose to gratify the sexual needs or desires of the offender."[1]
{¶ 13} Appellant sets forth that he was not convicted of a sexually oriented offense because the murder charge that he pled guilty to did not contain any sexually motivated specifications. Appellee, in support of its contention that the trial court properly declared appellant to be a sexually oriented offender, relies on the concept that appellant's offense of murder was committed with a purpose to gratify appellant's sexual needs or desires. Appellee's argument derives from former R.C. 2950.01(D)(3), which defines a "sexually oriented offense" as:
{¶ 14} "Regardless of the age of the victim of the offense, a violation of section 2903.01 [aggravated murder], 2903.02 [murder], 2903.11
[felonious assault], or 2905.01 [kidnapping] of the Revised Code, or of division (A) of section 2903.04 [involuntary manslaughter] of the Revised Code, that is committed with a purpose to gratify the sexual needs or desires of the offender[.]" "A sexually oriented offender is one who has committed a `sexually oriented offense' as that term is defined in R.C.2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator." Cook at 407.
{¶ 15} Appellant pled guilty to a lesser-included offense of murder, a violation of R.C. 2903.02. Murder is considered a "sexually oriented offense" if it is "committed with a purpose to gratify the sexual needs or desires of the offender." Former R.C. 2950.01(D)(3). Appellant argues that he was not convicted of a sexually violent offense or a sexually oriented offense because there was no sexual motivated specification and no conviction or guilty plea to the charge that the offense was "committed with a purpose to gratify the sexual needs or desires of the offender[.]" Whether or not the offense of murder is classified as one which was "committed with a purpose to gratify the sexual needs or desires of the offender" is a question of fact which lies with the unique facts and circumstances of each individual case. State v. Slade (Dec. 28, 1999), Franklin App. No. 98AP-1618.
{¶ 16} In this case, at appellant's 1993 sentencing hearing, the trial court did not adjudicate appellant as a sexually oriented offender, as the classification did not yet exist.[2] However, the facts introduced into evidence at the 2001 sexual predator hearing support the finding that appellant is a sexually oriented offender. Octavia was found in a remote area, with her blouse undone, her bare breasts exposed and smeared with blood, and her jeans unbuttoned and pulled down over her tights. Further investigation by the detectives revealed small aqua fibers on her bare breasts and blouse that matched the fibers found in appellant's car. In addition, at the time appellant committed the present offense, he was on probation for five years in the state of Maryland for a March 1991 assault of a woman. Based on the foregoing, we believe that the trial court did not err in adjudicating appellant a sexually oriented offender.
{¶ 17} Finally, appellant contends that he did not admit, stipulate, or agree that his conviction was a sexually oriented offense. The trial court concluded, "[a]s Defendant has not contested that he was convicted of a sexually oriented offense, he is found to be a sexually oriented offender." (November 29, 2001 Decision and Entry, 4.) Appellant contends that the record does not support the trial court's finding. However, appellant fails to point to a specific part of the record where he did contest the sexually oriented offense determination.
{¶ 18} R.C. 2950.09(B)(1) states that defendants must have notice of the sexual predator hearing in order to "have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator." See Cook at 407 (the trial court may designate an offender as a predator only after it holds a hearing where the offender is entitled to have counsel present, testify, and call and cross-examine witnesses). R.C. 2950.09(B)(1) further states that "[t]he court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing."
{¶ 19} Appellant and the prosecutor were notified on June 7, 2001, that appellant's R.C. 2950.09 hearing was set for October 17, 2001. However, on July 30, 2001, the trial court notified both parties that the hearing was reassigned to September 18, 2001. Another rescheduling entry was filed on September 19, 2001, notifying appellant and the prosecutor that the hearing was rescheduled to November 20, 2001. Appellant's counsel neither objected to nor contested the sexual predator hearing or that appellant committed a sexually oriented offense at any time prior to, during, or after the hearing. Appellant asserts that the November 20 hearing was to determine whether or not he was a sexual predator, and that the trial court erred when it based its finding that appellant was a sexually oriented offender when appellant did not contest the hearing. "While R.C. 2950.09(B)(1) requires the trial court to hold a hearing in order to determine whether the offender is a sexual predator, no separate hearing is required by the statute in order to determine that an individual who has committed one of the statutory sexually oriented offenses is a `sexually oriented offender.' " State v. O'Neil (Aug. 4, 1999), Wayne App. No. 97CA006982, citing Cook at 423-424.
{¶ 21} Appellant has failed to demonstrate any prejudice by the trial court adjudicating him as a sexually oriented offender. Based upon the above facts, we find that the record supported a finding that appellant's murder conviction was a sexually oriented offense because it was "committed with a purpose to gratify the sexual needs or desires of the offender." For these reasons, we find that appellant's arguments are without merit. Accordingly, appellant's sole assignment of error is not well-taken and is overruled.
{¶ 23} For the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, is affirmed.
Judgment affirmed.
BOWMAN and BROWN, JJ., concur.
[1] Now R.C. 2950.01(D)(1)(c), effective January 1, 2002.
[2] In 1996, the Ohio General Assembly passed H.B. No. 180 (R.C. Chapter 2950) creating registration and notification requirements for sex offenders. The legislature made the provisions of H.B. No. 180 applicable to offenders previously convicted, but not yet released from prison, probation or parole prior to its effective date.