[Cite as *In re Q.J.*, 2012-Ohio-4210.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.    11 BE 30 |
| | ) | |
| Q.J., | ) | O P I N I O N |
| | ) | |
| ALLEGED DELINQUENT CHILD. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
Juvenile Division, Case No. 10JA249.

JUDGMENT:                                           Affirmed.

APPEARANCES:
For Plaintiff-Appellee:                            Attorney Christopher Berhalter
                                                            Prosecuting Attorney
                                                            Attorney Scott Lloyd
                                                            Assistant Prosecuting Attorney
                                                            147-A West Main Street
                                                            St. Clairsville, Ohio  43950

For Defendant-Appellant:                      Attorney Scott Essad
                                                            721 Boardman-Poland Road, Suite 201
                                                            Youngstown, Ohio  44512

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  September 13, 2012

VUKOVICH, J.

{¶1}   Defendant-appellant Q.J. appeals the decision of the Belmont County Common Pleas Court, Juvenile Division, which classified him as a tier III sex offender and imposed community notification.   Appellant argues that the court abused its discretion in placing him in tier III and in imposing community notification. He also contends that the court violated his due process rights by holding an insufficient classification hearing.   For the following reasons, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶2}   Appellant was arrested on March 4, 2010 at age fifteen when an eight-year-old girl who lived in the next-door apartment reported that appellant had been anally raping her.  A complaint was filed charging him with one count of gross sexual imposition for having sexual contact with a child less than thirteen years of age in violation of R.C. 2907.05(A)(4), a third degree felony.   Appellant entered an admission to the allegation in the complaint and was adjudicated a delinquent child. A presentence investigation was conducted, and a dispositional hearing conducted.

{¶3}   On May 4, 2010, the court sentenced appellant to an indefinite sentence with a minimum of six months and a maximum period which could last until he reached 21 years of age.   Appellant was then transferred from the Juvenile Detention Center to New Horizon Youth Center, a residential treatment facility.

{¶4}   A sexual offender registration and notification (SORN) hearing was held on June 14, 2011.  The prosecutor advised that the state would be comfortable with a tier II classification but opined that community notification was necessary, pointing to the risk factors in the assessment provided by the youth center.  (Tr. 9).  Defense counsel focused on the positive aspects of the report, agreed to victim notification, and concluded that whether community notification should be required was "a close call" noting the humiliation appellant would face.   (Tr. 9-10).  Apparently, neither counsel nor the court realized at the time that community notification was only possible for new sex offenders classified under tier III.  See R.C. 2152.83(C)(2).

**{¶5}** At the hearing, appellant's mother and grandfather spoke asking that the court refrain from imposing community notification and mentioning that many people in town already know about the situation. (Tr. 10). The court responded that there is also concern that appellant could move to a community who is unaware of his offense. The case manager from the youth center agreed that community notification would be important should appellant move. (Tr. 11).

**{¶6}** The court expressed that it was considering the progress notes from the youth center, the report from the center (including the recidivism predictor and the risk factors outlined therein), and public safety. (Tr. 13). The court concluded that appellant would be classified as a tier II sex offender subject to community notification. (Tr. 14). An explanation of duties was then signed by appellant, his mother, and the court. The court checked the box for tier II and the box under that which stated, "Subject to community notification (applies to registrants previously subject to requirements)." The court's June 16, 2011 judgment entry also pronounced appellant a tier II sex offender subject to registration for twenty years and community notification.

**{¶7}** On June 22, 2011, the court entered another judgment entry which stated that its prior SORN determination was contrary to law, citing case law and a statute. The court then set the case for another SORN hearing, which proceeded without objection on July 26, 2011. At this hearing, it was disclosed that when appellant attempted to register as a tier II sex offender with community notification, the Sheriff and the Attorney General would not allow such registration because community notification does not exist for new tier II offenders. (Tr. 19). The prosecutor reiterated that his main concern was community notification. A general consensus was expressed that if the court demanded community notification, then tier III classification (which entails lifetime registration) was required.

**{¶8}** Defense counsel expressed his opinion that sex offenders should not be labeled for life but acknowledged that the court "will have to do what it's got to do." Appellant's grandfather made a statement equating a lifetime of community notification with a death sentence. (Tr. 20). The court responded that appellant's

classification could be amended later. (Tr. 21). The case manager assured the court that the contents of her report were still accurate, and the court advised that it was incorporating the information from the last hearing. (Tr. 20-21). At the hearing and in a July 26, 2011 judgment entry, the court classified appellant as a tier III sex offender and imposed community notification. Appellant filed a timely notice of appeal.

<u>JUVENILE SEX OFFENDER CLASSIFICATION</u>

**{¶9}** A sex offender includes a person who has been adjudicated a delinquent child for committing any sexually oriented offense. R.C. 2950.01(B)(1). There are three tiers of sex offenders, with tier I being the least severe and tier III being the most severe. Gross sexual imposition is a sexually oriented offense. R.C. 2950.01(A)(1), citing R.C. 2907.05. Gross sexual imposition of a child under thirteen in violation of R.C. 2907.05(A)(4) falls under tier II automatically for adults. R.C. 2950.01(F)(1)(c).

**{¶10}** However, all of the tiers provide an alternate definition for juveniles, stating that a juvenile sex offender falls under the tier assigned by the juvenile court. *See* R.C. 2950.01(E)(3), (F)(3), (G)(3). Thus, a juvenile court has discretion in classifying a juvenile into tiers. *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio 1446, 967 N.E.2d 729, ¶ 20. *See also* R.C. 2152.83(B)(2)(b), (C)(1); R.C. 2152.831(A), (B); R.C. 2950.01(E)(3), (F)(3), (G)(3).

**{¶11}** Initially, though, the juvenile court must determine if the juvenile should be classified as a juvenile offender registrant (JOR) and thus required to register under R.C. 2950.04 through 2950.06. A JOR classification in this case was discretionary because the child was fifteen and because the court was not required to classify the child as a JOR under R.C. 2152.82 (involving a juvenile with a prior adjudication for a sexually oriented offense) or as a public registry-qualified juvenile offender registrant (PRQJOR) under R.C. 2152.86 (dealing with a juvenile who commits certain crimes and is labeled a serious youthful offender). *See* R.C. 2152.83(B)(1).

**{¶12}** In making this determination, a judge shall conduct a hearing and consider all relevant factors, including but not limited to: (1) the nature of the offense;

(2) whether the offender has shown genuine remorse or compunction; (3) the public interest and safety; (4) the factors in R.C. 2950.11(K); (5) the relevant factors in R.C. 2929.12 (B) and (C); and (6) the results of any treatment and any follow-up professional assessment. R.C. 2152.83(D). *See also* R.C. 2152.83(B)(2); R.C. 2152.831(A).

{¶13} The factors in R.C. 2950.11(K) are: (1) the offender's age; (2) the offender's prior record; (3) the victim's age; (4) whether the offense involved multiple victims; (5) whether drugs or alcohol were used to impair the victim; (6) prior sentence completions; (7) any mental illness or mental disability of the offender; (8) the nature of the sexual interaction and whether the conduct was a demonstrated pattern of abuse; (9) whether the offender displayed or threatened cruelty during the offense; and (10) any additional behavioral characteristics. R.C. 2950.11(K).

{¶14} The existence of the following factors make an offense more serious: (1) any physical or mental injury suffered by the victim which was exacerbated due to the victim's physical or mental condition or age; (2) the victim suffered serious physical, psychological, or economic harm; (3-5) dealing with the offender's position in the community; (6) the offender's relationship with the victim facilitated the offense; (7) the offender committed the offense for hire or as a part of an organized criminal activity; (8) the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion; and (9) dealing with family or household members. R.C. 2929.12(B)

{¶15} The existence of the following factors make an offense less serious: (1) the victim induced or facilitated the offense; (2) the offender acted under strong provocation; (3) the offender did not cause or expect to cause physical harm to any person or property; and (4) there are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(C).

{¶16} After a hearing and consideration of all of the relevant factors, the judge must declare whether a JOR classification, and thus registration, should be imposed, and if so, under what tier the JOR should be classified. *See* R.C. 2152.83(B)(2)(b),

(C)(1); R.C. 2152.831(B). A JOR must register his address with the sheriff every year if he is classified in tier I, every 180 days if he is classified in tier II, and every ninety days if he is classified in tier III. R.C. 2950.06(B)(1)-(3). The registration obligation lasts for ten years for those classified in tier I, for twenty years for those classified in tier II, and for life for those classified in tier III. R.C. 2950.07(B)(1)-(3). It is only when the judge chooses tier III that he may then choose to impose community notification, which lasts for life unless eliminated as explained below. *See* R.C. 2152.83(C)(2).

{¶17} At the completion of the child's disposition, a judge can terminate the child's prior disposition as a JOR or can issue a downward modification of the prior tier classification. R.C. 2152.84(A)(1), (2)(b), (c). Thereafter, a JOR (who is not a PRQJOR) can petition the court every three years to seek modification or termination of the order. R.C. 2152.84(D); R.C. 2152.85 (A)(1), (B)(1)-(2). Appellant's three assignments of error deal with the application of these statutory provisions.

<u>ASSIGNMENTS OF ERROR NUMBERS ONE & THREE</u>

{¶18} Appellant's first and final assignments of error entail the same analysis of the factors and thus will be discussed together:

{¶19} "THE TRIAL COURT ERRED IN CLASSIFYING [APPELLANT] AS A TIER III SEX OFFENDER."

{¶20} "THE TRIAL COURT ABUSED ITS DISCRETION IN MANDATING A NOTIFICATION REQUIREMENT FOR [APPELLANT]"

{¶21} Appellant argues that the juvenile court abused its discretion in choosing to classify him as a tier III sex offender. He points out that the prosecutor and the youth center recommended that he be classified as a tier II offender and notes that the court initially followed this recommendation. He also notes that gross sexual imposition under R.C. 2907.05(A)(4) is generally categorized under tier II. *See* R.C. 2950.01(F)(1)(c). He acknowledges that the juvenile court has discretion in choosing the tier but complains that the court's focus was solely on community notification and that it only classified him as a tier III sex offender in order to achieve community notification. This ties in with appellant's third assignment of error where

he urges that the juvenile court abused its discretion in ordering community notification. He points to the stigma which will follow him and the positive aspects of the report.

**{¶22}** We review the relevant factors. When appellant was fourteen, it was reported that he exposed himself to a child. He was adjudicated a delinquent child for the offense of disorderly conduct due to that incident. He was placed on probation, which he violated when he committed the current offense. *See* R.C. 2950.11 (K)(6) (results of prior sentences).

**{¶23}** The eight-year-old female victim of the current offense reported that appellant, who was fifteen, sexually assaulted her many times in the summer of 2009 and that he anally raped her the last time in March 2010 just days prior to his arrest. *See* R.C. 2950.11(K)(1) (offender's age), (3) (victim's age), (8) (demonstrated pattern of abuse). The rape was not passively accepted by the victim as she tried to escape. During one of the assaults, she asked why he was doing this, and he answered, "Because I think it's funny." *See* R.C. 2950.11(K)(10) (additional behavioral characteristics).

**{¶24}** Appellant's sex offender therapy proceeded based upon the reports that the nature of the offense was multiple anal rapes, that is to say penetration. *See* R.C. 2152.83(D)(1) (nature of the offense). Although appellant was charged with only gross sexual imposition, entailing sexual contact without penetration, the true nature of the offense is a relevant consideration. *See* R.C. 2152.83(D) (non-exhaustive list). *See also State v. Cooey*, 46 Ohio St.3d 20, 35, 544 N.E.2d 895 (1989) (uncharged crimes are part of the defendant's social history and may be considered at sentencing); *State v. Cook*, 83 Ohio St.3d 404, 424-425, 700 N.E.2d 570 (1998) (presentence investigation report and victim impact statements admissible at sexual predator hearing, which is equated to a sentencing hearing).

**{¶25}** In fact, appellant's therapy proceeded under the premise that he also sexually assaulted a seven-year-old boy whom he reported that he chose as "practice." Appellant also related that he chose the eight-year-old female victim partly in order to exact revenge against her brother, who was once his best friend. This

victim was a neighbor and a playmate of his younger brother. *See* R.C. 2929.12(B) (the offender's relationship with the victim facilitated the offense).

{¶26} The report from the youth center also contained an "Estimate of Risk of Adolescent Sexual Offense Recidivism." It was reported that appellant presents with "at least a moderate risk" of sexual reoffending due to a plethora of high risk factors. For instance, he sexually assaulted two or more victims (continuing even after receiving court sanctions for exposing himself to two young children). He sexually assaulted the same victim two or more times (disclosing that he sexually assaulted the main female victim at least eight times and the seven-year-old male four times). It was emphasized that the victim was a child under ten, and it was noted that adolescents who intentionally sexually assault a prepubescent child are at a higher risk of reoffending.

{¶27} The risk assessment also found appellant's risk increased because he is indiscriminate in his choice of victims, sexually assaulting both male and female victims of varying ages and of varying familiarity with him (noting that the two children, to whom he exposed himself, were merely the closest in range when he wanted to act upon his sexual urges and one of them was merely three years old). It was said that the existence of a male victim increased the risk of reoffending. The risk was also increased due to his diverse and escalating sexual assault behaviors (beginning with fondling and ending with anal penetration of both the eight-year-old female and the seven-year-old male, whom he twice offended in front of his five-year-old brother). Additionally, his prior court sanctions for a sexually-based offense (although not meeting the definition of sexually oriented offense since he was only charged with disorderly conduct) and his initial resistance to treatment (which could have helped him avoid committing this offense) were both said to indicate an increased risk of reoffending.

{¶28} The therapist opined that it was reasonable to consider tier III classification. Still, she recommended tier II classification because appellant actively engaged in and completed his sex offender treatment, he modified his thoughts, behaviors, and interactions, he is realistic about his risk level and potential for

reoffending and has developed a plan to prevent future offenses, and his family is better educated about the need for close monitoring. The report also advised that appellant has become more accepting of responsibility for his actions. *See* R.C. 2152.83(D)(6) (the results of any treatment and follow-up professional assessment). It was stated that appellant has expressed remorse and seems to have empathy for the children and their families. *See* R.C. 2152.83(D)(2) (genuine remorse). The risk of recidivism was said to decrease as the family relationship became stronger. His family was apparently actively involved in his treatment and supportive of the center's requests for high supervision upon his release. It was also stated that, while being schooled at the youth center, he completed homework as assigned, was attentive and cooperative, and carried good grades.

**{¶29}** As for the eight-year-old female victim, the anal penetration caused physical pain, and she has experienced nightmares, difficulty sleeping, and chronic stomach pain due to her trauma. *See* R.C. 2929.12(B) (victim's physical and mental injury). At the time of the hearing, she had been in counseling for over a year. Her father fears her progress will be set back when appellant is released. (Tr. 16). She was once outgoing but is now subdued and fearful of older male juveniles. A week after reporting the incident, she was found crying on the couch and asked her father if he was going to kill her. Her brother, whom appellant was attempting to exact vengeance upon as a result of some type of rejection, attempted suicide after the offense was committed against his sister. Her father had been unable to work for a time due to chronic headaches associated with the stress of the situation.

**{¶30}** None of the mitigating factors making an offense less serious apply here. That is, the victim did not induce or facilitate the offense, the offender did not act under strong provocation, the offender caused or expected to cause physical harm, and there are no substantial grounds to mitigate his conduct. See R.C. 2929.12(C)(1)-(4). Finally, public safety is a major concern in this case involving children of tender years. *See* R.C. 2152.83(D)(3) (public interest and safety).

**{¶31}** In conclusion, the choosing of the tier is a discretionary function of the juvenile court. *In re C.P.,* 131 Ohio St.3d 513 at ¶ 20. There is nothing improper

about a court choosing tier III based upon a belief that community notification is required where that is the only tier that entails community notice. Moreover, it is not unreasonable to rely on the information in the youth center's report but refuse to accept the tier II recommendation; that is especially true where the representative from the center testifies that she did not think about community notification when drafting the report and further testifies that she agrees that appellant should be subject to community notification, voicing her concern that he could move near neighbors who are unaware of his background. Considering all of the relevant factors here, we conclude that there was no abuse of discretion in choosing tier III or in imposing community notification.

{¶32} Although appellant spent more than a year in a youth center where he impressed the staff with his progress, his risk of recidivism as reported by the center is said to be "at least moderate." The case manager's opinion relies heavily on the need for appellant's family to closely supervise him. However, he was over 16 years old at the time of his contemplated release, and constant supervision could be considered unrealistic.

{¶33} Appellant displayed many high risk factors. Notably, this was not a one-time, spontaneous offense. Rather, appellant was adjudicated a delinquent for exposing himself to two young children. He resisted treatment and instead planned the anal rape of his best friend's eight-year-old sister, a prepubescent child seven years younger than him. In order to practice, he assaulted a seven-year-old boy who was friends with his younger brother. He assaulted the eight-year-old female child at least eight times over many months. Although he was only charged with one count involving sexual contact rather than sexual conduct, the background information is that he anally raped her more than once.

{¶34} In accordance, the juvenile court did not act unreasonably, arbitrarily, or unconscionably in imposing community notification in this case. It was requested by the prosecutor and the victim's family, who lives next door to appellant's mother. The therapist found it desirable in this case. Even defense counsel admitted that it was a close call as to whether community notification was necessary. As the court pointed

out, a declassification or modification is possible at the end of the disposition and every three years after the classification. Upon consideration of all of the relevant factors, these assignments of error are overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶35}** Appellant's second assignment of error states:

**{¶36}** "APPELLANT['S] DUE PROCESS RIGHTS WERE VIOLATED BECAUSE THE 'HEARING' THAT THE TRIAL COURT CONDUCTED REGARDING QUINCY'S TIER CLASSIFICATION WAS SPARSE AND SUPERFICIAL."

**{¶37}** Appellant states that the first sexual offender registration and notification (SORN) hearing was abbreviated and the second hearing was even shorter, causing a violation of his due process rights. He also contends that the superficial hearings result in a failure to obtain sufficient evidence to make a tier III classification with community notification. However, whether there was adequate evidence that he should be subject to community notice was essentially disposed of in the two assignments analyzed above.

**{¶38}** A person has a constitutional right to the opportunity to be heard when the state seeks to infringe upon a protected liberty or property right. *See, e.g., Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Statutorily, the juvenile court is to hold a hearing before classifying the juvenile as a juvenile offender registrant (JOR), and this hearing can be held at the same time as the hearing for classifying into tiers. R.C. 2152.83(B)(2), (C)(1); R.C. 2152.831(A).

**{¶39}** Here, a SORN hearing was conducted on June 14, 2011. Appellant was present along with his attorney and family members. The court pointed to the report from the youth center. (Tr. 8). The prosecutor spoke, voicing belief that community notification was necessary and noting that the victim's family wished for community notice as well. The state pointed to the high risk factors in the report. (Tr. 9).

**{¶40}** Defense counsel praised the report and pointed out the positive portions of it, emphasizing appellant's remarkable change in thinking, interactions, and beliefs. He focused on the fact that a juvenile generally has more capability to

change than an adult. (Tr. 9). He acknowledged that community notification was a close call in this case and left the matter to the court's discretion. (Tr. 9-10). The court emphasized that the victim was eight. Appellant did not choose to speak. His mother and grandfather made statements, opining that appellant has changed and that everyone in town already knows what appellant did. (Tr. 10).

**{¶41}** As aforementioned, the court expressed concern with appellant moving near people who did not know about the incidents. The youth center representative testified that she did not consider public notification when she drafted her recommendation of tier II. She then agreed with the court's concern and opined that if appellant moves, people should be notified. (Tr. 11). Another youth center representative expressed that he had nothing to add that was not already addressed. The victim's father made a statement, emphasizing the importance of community notification so any neighbors can protect their children. (Tr. 12).

**{¶42}** The court then referenced the various items it was considering and certain factors that it was weighing. The court concluded that appellant should be classified under tier II subject to community notification. As the court was later advised that its sentence was contrary to law (since there was no community notification for Tier II), a new SORN hearing was commenced without objection. Appellant was present with his attorney and family. The youth center representatives were present. The victim's parents were present.

**{¶43}** The state reiterated its request for community notification. The victim's mother and father concurred in the need for community notification. Appellant did not wish to speak. His grandfather commented that community notification for life is like a death sentence. The court stated that it remembered the information from the hearing that took place the month before. (Tr. 20). The court ensured that the information in the youth center's report remained accurate and correct and was informed that they had no additional information. (Tr. 21).

**{¶44}** Appellant was provided with notice of the hearings. He appeared accompanied by those he wished to be present. He had the opportunity to speak but did not. His counsel had the opportunity to make arguments and to question

witnesses. It is not the court's obligation to interrogate witnesses that have not been questioned by either side. Counsel was not cut short or constrained in making his arguments. In fact, counsel acted under the belief that the court had before it what it needed to make its decision.

**{¶45}** The main evidence relied upon by both parties and the court was the youth center's report. Two representatives from the center were present if counsel wished to delve further into the contents of the report. Defense counsel expressed no issue with the court making its decision based upon the report as he was utilizing the favorable contents to make his own case. Where all parties wish to rest based mostly upon a report of the residential facility that had custody of the juvenile for over a year, it is not a due process violation for the court to accept the report and to utilize it to help evaluate the relevant factors and decide whether community notification should be imposed.

**{¶46}** The hearing provided the opportunity to be heard. Counsel decided to present some arguments that appellant had changed, refer to the report, and present statements from appellant's family. The court did not violate appellant's due process rights by concluding the hearing after the defense presented what they wanted to present. The defense was not prohibited from proceeding in any manner. As such, this argument is without merit, and this assignment of error is overruled.

**{¶47}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, P.J., concurs.